MITCHELL, sheriff, *et al. vs.* MALONE.

The sheriff of a certain county was requested, by letter from the authorities of another county, to arrest a person named, who was indicted for murder in the latter county. Upon receipt of the request, and without any warrant or other authority, the sheriff proceeded to another county than his own, arrested the plaintiff in this suit, tied and hand-cuffed him, carried him to the county of his (the sheriff's) residence, committed him to jail, and subsequently sent him thence to the county from which the request came, where it was ascertained that the plaintiff was not the party wanted, and he was discharged from arrest:

*Held* that, under these facts, the plaintiff was entitled to recover damages, and a verdict for the defendants was contrary to law.

(*a.*) If the. sheriff was honestly mistaken as to the identity of the person accused, or if he acted prudently and cautiously in ascertaining the truth of the matter, these facts might go in mitigation. of the damages, but would not altogether defeat a recovery.

(*b.*) Although two successive verdicts were found for the defendants, it was proper to grant a second new trial under the facts stated.

(*c.*) No opinion is expressed as to whether the damages to be recovered should be exemplary, actual or merely nominal.

December 21, 1886.

Actions. False Imprisonment. Damages. New Trial. Before Judge BOYNTON. Rockdale Superior Court. February Term, 1886.

William Malone brought suit against the sheriff of Rockdale county and the sureties on his bond to recover damages for false imprisonment. On the trial, the jury found for the defendants, and on motion, a new trial was granted. On the second trial, the evidence for the plaintiff was, in brief, as follows: About the 2d of September, 1883, the plaintiff was living at Cedar Shoals, in Newton county. Mitchell, the sheriff of Rockdale county, came to the plain-

tiff and asked if he was named Malone, to which he responded in the affirmative. The sheriff said he had come for the plaintiff and he must go with him. Plaintiff responded that he was willing to go, as there was nothing against him. Mitchell read a paper he had, and said the description fitted the plaintiff exactly. He then drew his pistol and proceeded to hand cuff the plaintiff, who asked what the charge against him was, as he might be able to show himself clear. He was told he was charged with murder. He said he was innocent of the charge. Several other persons came up, and one of them read the paper, and said it was not a description of plaintiff, but of John Malone. Plaintiff said his name was William, not John, and he had not been in Putnam county, where the crime was said to have been committed, in five years. Other persons present stated that they had known plaintiff many years; that his name was not John, and he had never been known by any other name but William since they had known him; and that the sheriff had made a mistake and was arresting the wrong person. The officer responded that he was satisfied plaintiff was John Malone, and he was going to take him away. Plaintiff asked to be allowed to see his employer to get some money, which was refused. He then asked for a legal investigation in order to prove his innocence, and this also was refused. He then asked to be allowed to get his coat (being in his shirt-sleeves) and other clothes; this also was refused. He then asked to be allowed to go by his home to inform his wife of his condition, and this was refused on the ground of lack of time. He was carried to Conyers and put in jail. While this was being done, another person stated that he knew John Malone, and the plaintiff was not he. Plaintiff was kept locked in jail until about ten o'clock at night, when he was delivered to one Pierson, purporting to be an officer from Putnam county, who tied him, carried him on a train to Madison, and thence in a buggy twenty-two miles to Eatonton, where they arrived about day-break. Plaintiff was

kept locked in jail there until about eight o'clock next morning, when one John Wright came into the jail to see him, but, after examining, stated that there was a mistake, and plaintiff should be released. The jailor released him, and Wright gave him $2 to aid him in reaching home. When quite small, plaintiff had been called Bill Frick, but changed his name to William Malone, and had been known so ever since. He had lived in Putnam county some five or six years before the arrest, but during the time named had lived in Rockdale and Newton counties. The sheriff did not mistreat and abuse him, except by arresting and putting him in jail. The plaintiff's wife was a bright mulatto, and their child was dark, and this was what was meant when it was said in defendant's testimony that she was white, or nearly so. There was other testimony in respect to loss of time, expenses, etc.

The evidence for the defendants was, in brief, as follows : Mitchell, the sheriff of Rockdale county, received a letter from the sheriff of Putnam county, dated September 17, 1883, stating that the writer had a warrant for John Malone, of the following description : He is working for a man by the name of Allen; weight about 135 or 150 pounds ; large full eyes and large full mouth or lips; very black; and about five feet nine or ten inches high. In March, 1883, a warrant had been issued for John Malone, charging him with assault with intent to murder. In receipt of the letter above stated, the defendant made inquiries, and the result was that he was led to go to the place where the plaintiff was. He was told that the plaintiff was going under the names of Bill Fricks, Bill Malone, John Fricks and John Malone. As soon as he saw him, he was satisfied that he was the man wanted. Plaintiff made no objections to going, but seemed anxious to get off, saying that there was nothing against him and he would be back in a day or two. The sheriff read the description to the plaintiff, and asked if he did not think he "filled the bill," and the plaintiff replied, he thought so.

Defendant still thinks he answers the description. He put hand-cuffs on the plaintiff. He denied that the various requests of plaintiff to be allowed to see his employer, etc., were made, as testified. He had no malice, but acted in good faith under the instructions of the letter. After reaching Conyers, a dispatch was sent to the sheriff of Putnam county that plaintiff was arrested and asking that he be sent for. Next day, Pierson, as deputy sheriff, came with a warrant for John Malone, and plaintiff was delivered to him and by him carried to Eatonton. Mitchell asked plaintiff if there was a white woman about Cedar Shoals with a colored child, and plaintiff replied that she was his wife. He also told the sheriff that he had been in Putnam county some years before; that he left because he was afraid of having a difficulty with a person mentioned; and that he told his employer there that he would have to leave; else the person named would kill him, or he would have to kill the person. Several persons stated to Mitchell that the plaintiff was named Bill, not John, Malone, and that they had known him a number of years.

The jury found for the defendants. The plaintiff moved for a new trial on the grounds that the verdict was contrary to law, evidence and the charge of the court. The motion was granted, and the defendants excepted.

A. C. McCALLA; G. W. GLEATON, for plaintiffs in error.

J. N. GLENN; CAPERS DICKSON, for defendant.

HALL, Justice.

William Malone brought suit against Mitchell, sheriff of Rockdale county, for arresting and imprisoning him wrongfully and without authority of law; and two trials have been had, in both of which there were verdicts for the defendant, and each time the verdict has been set aside and a new trial granted solely upon the ground that it was not only contrary to law and evidence, but without any

evidence to support it.  That this judgment granting a second new trial was correct, there can be no question. The sheriff, by letter from the authorities of Putnam county, was requested to arrest one John Malone, who was indicted for murder in that county.  Upon receipt of that request, and without any warrant or other authority, he proceeded to Newton county and arrested the plaintiff in this suit, tied and hand-cuffed him and carried him to Conyers, in Rockdale county, where he committed him to jail, and sent him thence to Putnam county, where it was ascertained that he was not the party wanted, and where he was discharged from arrest.  As to these facts, there is not the least controversy.  The case as made entitles the plaintiff to damages; and while it may be insisted that the fact that the sheriff was honestly mistaken as to the identity of the party accused, if that be found so by the jury, or that he acted prudently and cautiously in ascertaining the truth of this matter, should go in mitigation of the damages, it will not defeat the recovery.  Code, §§2968, 2969; Broom's C. L., 683, *et seq.*  So long as juries disregard such a manifest right to redress for wrong so clearly established, their verdict ought to be set aside.  Whether the damages found shall prove so inadequate or excessive as to show improper bias or prejudice, will be questions for the determination of the superior court when they properly arise, and we intimate nothing as to what the finding should be, or whether this was a wilful and negligent wrong requiring exemplary damages, or such as will compensate the party for loss of time, expenses incurred, etc., or such as are merely nominal; all that we determine is, that he was entitled to recover such damages as the evidence showed he had sustained.

Judgment affirmed.