## KENNEDY & BLUN vs. DAVIS & SCOTT.

1. Though mortgagees were instructed by the mortgagors to appropriate to the mortgage debt the proceeds of the sale of certain goods shipped, yet where the mortgagors subsequently drew for such proceeds, the instructions first given were revoked to the extent of the drafts, to which, if accepted by the mortgagees, the proceeds of the sale might be applied.

(a) The reception without objection by the mortgagors of accounts of sales showing the disposition made of the proceeds, and allowing the mortgage to remain in the hands of the mortgagees, with all other facts and circumstances of the case, are opposed to a verdict supporting a plea that the mortgage was paid off.

2. A second verdict in favor of the same party should be set aside if there be no evidence to authorize it.

November 21, 1888.

Mortgages. Debtor and creditor. Appropriation of payments. New trial. Verdict. Before Judge HINES. Scriven superior court. May term, 1888.

Reported in the decision.

DELL & WADE, for plaintiffs.

OLIVER & HUMPHRIES and T. H. POTTER, by brief, for defendants.

SIMMONS, Justice.

Kennedy & Blun sought to foreclose a mortgage given them by Davis & Scott upon certain realty. Davis & Scott filed three pleas : (1) the general issue, (2) recoupment, (3) payment. The jury returned a verdict in favor of the defendants, and the plaintiffs made a motion for a new

trial, which was overruled, and they excepted. The main issue on the trial in the court below seemed to have been on the third plea, in which Davis & Scott alleged that the mortgage was paid off, by reason of the fact that when they shipped turpentine and rosin to the plaintiffs, they gave them instructions to appropriate the proceeds of the same to the payment of the mortgage. This was testified to positively by one of the defendants; and he also testified that his firm had drawn several drafts upon the plaintiffs, and that he expected the plaintiffs to use the proceeds of the goods sent in payment of these drafts, but thought the proceeds of the goods would be sufficient to pay off the draft and the mortgage. In this it appears he was mistaken. It also appears from the testimony that when this settlement was had between Davis, one of the defendants, and Blun, one of the plaintiffs, Davis insisted on Blun's surrendering the mortgage, which Blun refused to do; whereupon Davis declined to proceed with the settlement until he could see a lawyer. Having seen the lawyer, he completed the settlement by giving new notes, and Blun kept the mortgage; and this was the mortgage sought to be foreclosed.

1. Among the grounds taken in the motion for a new trial, was the ground that the verdict was strongly and decidedly against the weight of the evidence. We think the court below should have granted a new trial on that ground. While it is true that Davis & Scott instructed the plaintiffs to appropriate the proceeds of the sale of the turpentine and rosin to the payment of this mortgage, the evidence as above set out shows that, subsequent to this instruction, they drew drafts on the plaintiffs; and we think that the drawing of these drafts on the proceeds of the sale of the goods was a revocation of the instructions first given, to the extent of the

drafts drawn; and if the plaintiffs accepted these drafts, they had a right to apply the proceeds of the goods in payment thereof. *Hilton vs. Sims & Co.*, 45 *Ga.* 565.

In addition to this, the evidence shows that the plaintiffs sent the defendants, during the year, three accounts of sales, which accounts of sales informed the defendants of the disposition made of the proceeds of the sale of the goods. The record does not show that the defendants objected to the disposition thus made of the proceeds of the goods, although they were requested in each one of the accounts of sales to examine them and report any errors therein. But it is argued also by counsel for the defendants in error that, pending the settlement between these parties, Blun, one of the plaintiffs, admitted that this mortgage had been paid off, and it is claimed that this will authorize the finding of the jury. Blun denies this; but outside of his denial, we think the testimony of Davis, the defendant, on this point, would not authorize the finding of the jury. While Davis testifies that Blun made this admission, he also testifies that he demanded the mortgage from Blun, and that Blun refused to surrender it; that he (Davis) refused to complete the settlement unless it was surrendered, and that after seeing a lawyer about it, he allowed Blun to keep the mortgage for the purpose, as he says, of protecting Blun against judgments which had been rendered against him and Scott. It also appears that, at the time of the settlement, the amount due Kennedy & Blun was $1,991.36, that a note and a new mortgage were given by Davis & Scott for $791.36, the excess over the $1,200 secured by the first mortgage, and that Davis took it home with him and he and Scott executed it. This shows that Blun did not consider the first mortgage paid off, and his reason for refusing to surrender it. If it was paid off, what se-

curity would Blun have had for the $1,200 originally advanced? We think these facts go to sustain the denial of Blun. If the mortgage had been paid off as claimed by Davis, he should have insisted on its surrender, and not left it in the hands of the plaintiff for any purpose, or for the purpose of getting rid of Blun, as he says further on in his testimony.

2. Counsel for the defendant in error also insists that this, being the second verdict, should not be disturbed; and several cases are cited where this court has so ruled. All of those cases, however, are predicated upon the fact that there was some evidence to sustain the verdict. They differ, in our opinion, from this case. Taking all the facts in this case, as disclosed by the record, we do not think there is any evidence which authorized the jury to return this verdict. When there is no evidence to authorize the verdict, every court which has the power should set aside the verdict, regardless of the number of verdicts which the jury may erroneously return. *Elliott vs. W. & A. R. R.*, 62 *Ga.* 162; *Malone vs. Mitchell*, 77 *Ga.* 301. Under this view of the case, it is unnecessary to discuss the other grounds of the motion.

Judgment reversed.