[No. 12724. Department One. January 11, 1918.]

C. F. BAASCH, *Appellant*, v. COOKS UNION, LOCAL No. 33, *et al.*, *Respondents*.[1]

INJUNCTION—DISMISSAL—PICKETING. It is error to dismiss an action for an injunction and damages on account of picketing, on the mere statement of counsel for defendants that the acts complained of would be discontinued, where the complaint showed serious injury to plaintiff's business and legal right to the relief prayed for.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered October 20, 1914, dismissing an action for an injunction. Reversed.

*Brightman, Halverstadt & Tennant*, for appellant.

*Thomas B. MacMahon*, for respondents.

FULLERTON, J.—The plaintiff, C. F. Baasch, owned and conducted a restaurant on Third avenue near Madison street, in the city of Seattle, Washington. Because he ran what is known as an "open shop," one in which he did not require his employees to hold membership in labor unions, his place of business was subjected to picketing at the instance and under the authority of the Central Labor Council and the various unions of the city, made up of cooks, waiters, and waitresses. The plaintiff brought an action against the Cooks Union, Local No. 33, the Waiters Union, Local No. 239, the Waitress Union, Local No. 240, the Central Labor Council, and the officers, business agents, and members of those organizations, for the purpose of enjoining such picketing. The complaint alleged that:

"(11) The defendant caused pickets to be stationed in front of the plaintiff's place of business and to march up and down the sidewalk in front of his said store-room, bearing on their bodies white banners on which appear very prominently the words, 'Baasch German Lunch Unfair to Or-

[1]Reported in 169 Pac. 843.

ganized Labor' in such letters as to be legible to parties a considerable distance from said pickets as aforesaid; that said pickets begin their picketing at about six o'clock in the morning and continue thereat, working in shifts, until approximately twelve o'clock at night; . . . that some of the pickets so stationed in front of plaintiff's place of business as aforesaid, have frequently and from time to time approached the windows in front of the plaintiff's store-room, and made grimaces and faces at plaintiff's patrons in his place of business, and have in every way sought to annoy plaintiff and his patrons while they are in his place of business, as aforesaid."

The complaint contained the further allegations:

"(12) That a number of plaintiff's patrons have been approached by the defendants and warned not to enter the plaintiff's place of business, or have business dealings with him, and have been warned not to trade further with the plaintiff; that the defendants above named and said pickets have been engaged in attempting to cause the public to believe that plaintiff's place of business is unfair to organized labor, and have attempted to induce them, by threats and covert insinuations, from having any business dealings with the plaintiff; that, in speaking to plaintiff's customers as aforesaid, the defendants have done so deliberately and in such a way as to cause said persons to understand that if they continue to have business dealings with plaintiff they will thereby incur the displeasure of organized labor, and that organized labor would institute similar tactics against them if they continue to have business dealing with the plaintiff or to trade at his place of business as aforesaid, and the defendants above named intend that plaintiff's customers, so spoken to by them, shall understand that such threat is being made against them and each of them. . . .

"(16) That the wages paid by the plaintiff are in all respects equal to and as high as the scale of wages demanded by the defendant unions; that the conditions under which the employees are working for the plaintiff are the very best existing in that employment; that their hours of labor in all respects conform to law; that plaintiff's place of business is conducted according to the most approved sanitary methods; that the plaintiffs above mentioned are all and each of them

fully satisfied with their wages, hours of labor and conditions of employment, and the plaintiff desires to retain said employees and each of them in his employment because they and each of them are faithful and efficient and in all respects desirable employees. . . .

"(18) That the defendants above named have been, and are now, engaged in endeavoring to persuade the public and the plaintiff's patrons particularly, by such threats and covert insinuations made by them as aforesaid, to boycott plaintiff until he shall comply with the demand of the defendant unions as aforesaid, and have thereby caused a large number of plaintiff's customers who have been such for a considerable time past, to remain away from plaintiff's place of business because of such actions so taken by them; that the action of the defendants is joint and concerted and so had pursuant to an agreement made between them and prior to the commencement of said actions by them, with the malicious intention of injuring the plaintiff's business, and driving him out of business, or injuring plaintiff's business to such an extent that he shall be compelled to compel his employees to join the defendant unions against their will and wishes, or to discharge them from their employment; that the defendants have threatened to drive the plaintiff out of business; that they are endeavoring to carry out their threats by diverting the patronage which, prior to their action, had been going to plaintiff's place of business; that the defendants, by their said action aforesaid, have diverted a large part of plaintiff's business, and have been reducing plaintiff's daily receipts in a very large sum; that the business built up by the plaintiff, as aforesaid, is being driven away from him, his business is being ruined, and unless the plaintiff shall comply with the demand of the defendant unions as aforesaid, he alleges the fact to be that his business will be absolutely ruined; that it will be driven away from him and will be totally destroyed; that the defendants above named are wholly irresponsible, are insolvent and are unable to respond in damages; that the damages suffered by the plaintiff are exceedingly difficult to ascertain because of the fact that plaintiff's business heretofore had been steadily growing and increasing until the action of the defendants above mentioned; that plaintiff has no adequate remedy at law, but is relievable only in a court of equity."

The prayer was, that an injunction *pendente lite* should be granted to restrain such boycott and picketing; that such temporary injunction be made permanent; that plaintiff have judgment against defendants, and each of them, in the sum of $1,500, and such further relief as the court may deem equitable, together with his costs and disbursements.

The court made a show cause order to defendants to appear and present grounds for the refusal of the temporary injunction. On the day set for hearing, the attorney for defendants appeared and, without having filed any pleading, orally moved in open court for the dismissal of the action on his assurance to the court that the picketing had been discontinued and would not be resumed. Upon his motion for dismissal, made over the objection of the plaintiff, the court entered the following order:

"And the plaintiff announced that he was ready to proceed with the hearing, at which time the said MacMahon, as attorney for the defendants, stated to the court that, if the court would dismiss the action, the pickets placed and maintained by the defendants in front of the plaintiff's place of business in the city of Seattle, King county, Washington, would be withdrawn, and thereupon the court, of its own motion, and over the objection and protest of the plaintiff, ordered that said action be dismissed with prejudice so long as said promise was honored, and the court being fully advised in the premises,

"It is ordered, adjudged and decreed that the above entitled action be, and the same hereby is, dismissed with prejudice so long as the defendants above named shall remove and keep removed the pickets in front of plaintiff's place of business in the city of Seattle, King county, Washington, but that upon pickets being placed in front of plaintiff's place of business as aforesaid, the plaintiff have leave to commence another action therefor, and for the causes set forth in the complaint herein."

The plaintiff appeals from the judgment of dismissal as constituting error in law. The allegations of the complaint unquestionably state a cause of action under the authority of *St. Germain v. Bakery & Confectionery Workers' Union*

*No. 9*, 97 Wash. 282, 166 Pac. 665, and *Jensen v. Cooks' &
Waiters' Union*, 39 Wash. 531, 81 Pac. 1069, 4 L. R. A.
(N. S.) 302. The complaint showed that serious damage
had been done to plaintiff's business, for which he was en-
titled not only to relief against its continuance or repetition,
but also to damages for the financial loss occasioned by the
wrongful acts of the defendants. But the court, with full
knowledge of the injuries caused the plaintiff through the
illegal conduct of defendants, refused the right of trial on
the mere assurance of opposing counsel that his clients would
discontinue their acts. Future good behavior has never been
recognized as an antidote for past actions which have occa-
sioned substantial prejudice to the complainant. Although
the chief object of the action may have been the restraining of
the continuance of the illegal acts, yet, conjoined with the
demand for relief on that score, was the added demand for
compensation for the injury inflicted by the wrongful acts
before they were discontinued. The trial judge recognized
the weakness of his position by stating, at the time of dis-
missing the action: "I may not have the right to do it. I
think it is the part of wisdom and good citizenship and good
morals to do it, and I will take the responsibility. If the
supreme court says I have no right, they can say so." We
think the lower court was in error. The guide for its rulings
is found in the code of legal obligations, rather than in the
moral code.

In *State ex rel. Hennessy v. Huston*, 32 Wash. 154, 72
Pac. 1015, we held that a judgment of dismissal on the
court's own motion, while issues of fact were pending and no
challenge to the sufficiency of the complaint had been inter-
posed, was error. Our statute (Rem. Code, § 408) author-
izes dismissals of actions on the court's own motion only
where the plaintiff abandons the action or fails to comply
with an order of the court concerning the proceedings in the
action or the making of necessary parties. That section also
covers the cases in which a dismissal or nonsuit may be had

upon the application of parties. Then in the following section, 409, it is provided: "In every case other than those mentioned in the last section, the judgment shall be rendered on the merits." We think it plain that the action of the court was without warrant of law.

The judgment is reversed, and the cause remanded with instructions to require the defendants to plead to the complaint; and, in default thereof, upon a hearing, to award plaintiff such judgment as he may show himself entitled to.

ELLIS, C. J., MOUNT, MORRIS, and CHADWICK, JJ., concur.