### 10477.   HAMLIN *et al. v.* LUPO.

1. "The trial court has the power to require, and should require, the production of any pertinent documentary evidence which may illustrate the issue, and which is within the power or custody of any person then personally in court, except where the disclosure is prevented by privilege." *Atlantic Coast Line R. Co.* v. *Hill,* 12 *Ga. App.* 392 (3), 396 (77 S. E. 316). In this case the papers did not come within the exception stated.
2. Conflict of testimony does not render the direction of a verdict erroneous, when it appears that the conflict was immaterial, and that, giving to the opposite party the benefit of the most favorable view of the evidence as a whole and all legitimate inference therefrom, the verdict against him was demanded. See *Shedd* v. *Standard Sewing Machine Co.,* 21 *Ga. App.* 373 (2), 376 (94 S. E. 646).

DECIDED NOVEMBER 6, 1919.

Complaint; from city court of Eastman—Judge Griffin.   March 8, 1919.

*C. W. Atwill,* for plaintiff in error.

*Roberts & Smith.* contra.

SMITH, J.   This is a suit upon a promissory note.   The defendants filed a plea of payment.   The court directed a verdict for the plaintiff.   The defendants made a motion for a new trial, which was overruled, and they excepted.

The sole issue involved in the case is one of payment.   The defendants claimed that they had made two payments on the note sued upon.   On the other hand, the plaintiff claimed that the principal debtor owed him several hundred dollars, including notes and an account, and that the payments referred to were not made on the note sued upon, but were payments on an account.   On the trial the plaintiff testified that neither one of the defendants had ever paid him anything on the note in question, but that the payments relied upon by the defendants as a defense were made on an account, and so credited on his books.   He then introduced in evidence his books showing several items of account due him by the defendant Hamlin.   The defendant Hamlin testified that he owed

the plaintiff only a small balance of $5 on the note, as he had paid him $50 in money and instructed him to credit it on the note, and that the plaintiff "took the money with that understanding, and said he would do so." This witness testified further that he gave his "son John $50, and instructed him to tell Mr. Lupo [the plaintiff] to credit it on this note." The witness also stated that he did owe the plaintiff a balance on an account, but that he did not know exactly how much. The defendant's son testified that his father gave him $50 in money, instructing him to give it to the plaintiff and tell him to credit it on the note sued upon, and that he paid the money to the plaintiff in accordance with his father's instructions. The plaintiff, on redirect examination, denied that he was ever instructed by the defendant Hamlin or his son to apply the payments in question to the note, and testified that he gave a receipt to each of them, which would show for itself that the payments made were credited not on the note but on an account. By an order of the trial judge the receipts were brought into court and introduced in evidence. They were as follows: "Received of J. M. Hamlin fifty-five and no/100 dollars (in Cochran) on acct. [Signed] R. N. Lupo. Nov. 16th, 1912." "Received of J. M. Hamlin fifty and no/100 dollars on acct. (by Johnny). [Signed] R. N. Lupo. Empire, Ga., June 11th, 1912."

This was in substance the entire evidence introduced, and it will be observed that there is absolutely no evidence whatever from Hamlin that at the time he received the receipts he made any complaint as to their wording, which showed clearly that they were given for certain payments on *an account* and not for payments on the note sued upon. Neither is there any evidence showing, or even tending to show, that the plaintiff practiced fraud upon or in any respect exercised any undue influence over the defendant. Under these circumstances the taking of the receipts, which the defendant accepted without complaint and actually held in his possession until ordered to produce them on the trial, was such an acquiescence on his part as to what they contained or recited as to bind him. In *Bird* v. *Benton,* 127 *Ga.* 371 (3), 372 (56 S. E. 450), the Supreme Court approved the following charge to the jury: "If, after directing the application of payments to mule notes, the defendant consented, directly or impliedly, from his acts or words, to a different application of said payments from that

requested, or acquiesced in a different application of said payments from that requested, then he would be bound by his acquiescence." In *Kennedy* v. *Davis,* 82 *Ga.* 210 (8 S. E. 52), it was held that "The reception without objection by the mortgagors of accounts of sales showing the disposition made of proceeds, and allowing the mortgage to remain in the hands of the mortgagees, with all other facts and circumstances of the case, are opposed to a verdict supporting a plea that the mortgage was paid off."

Although it is true that a receipt is not a contract, but merely an admission in writing of the fact of payment or other settlement between debtor and creditor, and, under section 5795 of the Civil Code (1910), it is only prima facie evidence of payment, and is subject to explanation, in this case there was no sufficient explanation showing why the defendant should not be bound by the recitals in the receipts. The court therefore did not err in directing a verdict for the plaintiff.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*