34920.  GOODWIN *v.* ALLEN *et al.*

DECIDED NOVEMBER 24, 1953.

*Daniel Duke,* for plaintiff in error.

J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, Martin McFarland, Henry L. Bowden, contra.

TOWNSEND, J. ■ The plaintiff in this civil action for false arrest and imprisonment was arrested in May, 1946, by the defendant officers on a charge of keeping a lewd house, and on the trial of the case was acquitted. At the trial of this action one of the officers testified that the plaintiff's home had the reputation of being a lewd house in 1945. Another witness testified that the reputation of the house was bad in 1943, 1944, and 1945. Two other witnesses testified to certain specific acts of lewdness which occurred there in 1944. The first four special grounds of the amended motion for new trial assign error on the admission of the testimony of these witnesses over various objections hereinafter discussed.

■ The testimony as to reputation of the establishment was not objectionable, as contended, because irrelevant to the issue being tried. Although good faith on the part of police officers in making an illegal arrest is not a defense, it may be considered as an extenuating circumstance and in mitigation of damages. Therefore, evidence as to the reputation of the house would be relevant to this issue, and the court properly charged as follows: "Evidence of good faith and of probable cause, where the arrest is made illegally without a warrant, may be considered by the jury only for the purpose of mitigation of the damages." See *Mitchell* v. *Malone,* 77 *Ga.* 301; *Conoly* v. *Imperial Tobacco Co.,* 63 *Ga. App.* 880 (3) (12 S. E. 2d 398).

■ The specific acts of lewdness which occurred in 1944 were objected to on the ground, among others, that reputation cannot properly be proved by specific acts. However, it does not appear that this testimony was allowed for the purpose of proving reputation, but that it was offered for the purpose of showing that the house was run as a lewd house at that time. It is proper to prove that a house is a lewd house by testimony as to specific acts committed therein or connected therewith. *Fitzgerald* v. *State,* 10 *Ga. App.* 70 (72 S. E. 541). This testimony,

like that concerning reputation, was proper to show lack of bad faith on the part of the defendants, in mitigation of damages.

The above testimony related to the reputation of and occurrences in the house one, two, and three years before the plaintiff's arrest. Such evidence was not too remote in point of time, it being also shown that the plaintiff owned the house and resided therein at those times, and also at the time of the arrest.

It was not necessary to make a showing of diligence in obtaining the witnesses whose testimony was read from the record of the former trial, in view of the stipulation that such testimony, or so much of it as was competent, might be offered without objection.

"Where a writing containing the testimony of a witness who was sworn upon a former trial, but who has since died, is offered in evidence, all of such testimony which is relevant and material should be received; and while the party offering it is not bound to read the entire testimony, those portions of it not read by him may be read by the opposite party as evidence introduced by him who first offers it." *Waller* v. *State,* 102 *Ga.* 684(2) (28 S. E. 284). Accordingly, counsel offering the evidence of a witness on a former trial may also over objection read the cross-examination of opposing counsel.

Special ground 5 contends that the court erred in failing to give to the jury a requested charge as follows: "A peace officer not armed with a warrant cannot lawfully enter a private house or enclosure for the purpose of making an arrest for a misdemeanor which he believes or suspects is being committed therein." Technically, the court committed no error in refusing this request, under the rule that a request to charge must, to sustain an assignment of error, be itself correct and perfect. *Lewis* v. *State,* 196 *Ga.* 755(3) (27 S. E. 2d 659) ; *Fitzgerald* v. *State,* 82 *Ga. App.* 521 (3) (61 S. E. 2d 666). The rule is that a peace officer not armed with a warrant cannot lawfully make an arrest unless the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Code § 27-207. A crime may be committed in the presence and within the immediate knowledge of an officer although not within the range of his vision, as where a woman

was being beaten within a private dwelling and an officer outside the house, hearing the disturbance, including her screams and cries for help, entered the house and attempted to arrest the offender. *Ramsey* v. *State*, 92 *Ga.* 53(4) (17 S. E. 613). In such case the crime is committed within the presence and within the immediate knowledge of the officer in contemplation of law, and the officer would also "believe and suspect" that a misdemeanor was being committed. The request here would have been perfect had it been so couched as to instruct the jury that a peace officer not armed with a warrant cannot lawfully enter a private house for the purpose of making an arrest for a misdemeanor which is not committed in his presence, and which he *merely* believes or suspects is being committed therein.

■ It was not error for the trial judge in his charge to define the crime of keeping a lewd house. The excerpt from the charge complained of in special ground 6 correctly sets out the elements necessary to constitute the offense of keeping a lewd house and the manner in which such offense may be proved. This charge was applicable for the purpose of showing lack of bad faith of the officers in making the arrest, in mitigation of damages. It was not necessary to charge on the degree of evidence which would be necessary for conviction in a criminal case, and any error in this regard would not be harmful to the plaintiff here, this being a civil action.

■ In passing on the general grounds, the evidence, construed in its light most favorable to the verdict, is in substance as follows: that at about 4 p.m. on May 11, 1946, the defendants were informed by their superior officer that there had been a complaint about the plaintiff's house, and that they should go over and talk to her about it; that they went off duty at that time but came back at 8 p.m.; that they went to the plaintiff's house around 11 that night and knocked on the door; that the plaintiff invited them into the living room and they proceeded to inform her about the complaints; that she then went to the rear of the house calling out that the police were there; that they followed her down a hall to a closed door and attempted to gain entrance thereto; that after four or five minutes the door was opened and they found two girls in pajamas; that they found a man's shirt in the room and vaseline and contraceptives

under a pillow; that the girls told them the boys had gone out a side entrance; that they went out and looked for the men but did not find them; that there was one man in another room who appeared to be a regular roomer in the house; that they arrested the plaintiff and the two girls and took them to the jail; that the plaintiff was arrested for maintaining a lewd house; that the officers were present and testified on the trial of this case, and the plaintiff, Mrs. Goodwin, was acquitted of the charges against her; that on that trial the girls denied that there had been any men in their room, which they rented from the plaintiff, and denied that they had made any such statement to the police officers; that the officers did not have a warrant, and did not deny the testimony of the plaintiff, which was to the effect that she forbade them to search the house and demanded to see their warrants, to which they replied, "We are walking warrants." The defendants also offered in evidence certain witnesses who testified that the plaintiff had been guilty of certain acts constituting the offense of operating a lewd house at various times in the past, and that her house had the reputation of being a lewd house at the time the arrest was made. The plaintiff denied all of this testimony and offered witnesses as to her good character.

As previously stated, this is the second appearance of this case before this court. When the case was here before, the record disclosed that the trial court charged the provisions of Code § 27-207, which details the circumstances under which an officer may make an arrest without a warrant; and Code § 27-211, which details the circumstances under which a private citizen may make an arrest, and also circumstances under which a crime may be committed in the presence of an officer which would authorize him to make a legal arrest without a warrant. These excerpts from the charge given on the former trial were held to have stated a correct principle of law, but the case was reversed because they were given in charge erroneously as being unauthorized by the evidence. See *Goodwin* v. *Allen,* supra, division 3, page 617 et seq. The case was reversed on special grounds, and no decision was made by this court as to the sufficiency of the evidence as a whole to support the verdict, under the general grounds. The evidence is, nevertheless, substantially

the same on this appearance of the case as it was before. Notwithstanding the ruling of this court in division 3, the trial court, although a different judge, again charged these principles of law. On this appearance of the case, these excerpts from the charge are without exception. However, the decision of this court in division 3 of the previous case is to the effect that the evidence discloses no defense on behalf of the officers who made the arrest. This was recognized by counsel for the defendants, who, in their motion to rehear on the first appearance of the case, made the following statement: "The ruling . . . in division 3 of the opinion . . . is tantamount to a holding that the trial judge should direct a verdict for the plaintiff." The evidence demands a finding that no crime was being committed in the presence of the officers, and that the arrest of the plaintiff falls in none of the other exceptions to the making of a legal arrest by an officer or a private citizen without a warrant. All the evidence on behalf of the officers only authorizes a finding that the plaintiff had been guilty of a crime or crimes, including that of operating a lewd house at other times not in the presence of the officers.

Accordingly, as hereinbefore pointed out, and as charged by the trial court, such evidence can be considered only in mitigation of damages. This case, therefore, presents no complex legal problem. The evidence demands a finding that the arrest was illegal and that, although there was evidence authorizing mitigation of the damages, a verdict in some amount is demanded for the plaintiff. The verdict having been for the defendants, the question of damages and the amount thereof is not before this court.

The Bill of Rights of our Constitution and the laws enacted pursuant thereto are primarily for the protection of the sovereign citizen against unauthorized acts of our public officers. A part of the first provision of the Bill of Rights (article I, section I, paragraph I, Constitution of Georgia of 1945; Code, Ann., § 2-101) provides as follows: "Public officers are the trustees and servants of the people, and at all times amenable to them." The Constitution and the laws are for the protection of all our sovereign citizens. A citizen does not lose his sovereignty by reason of the commission of a misdemeanor, nor does a citi-

zen, before conviction, lose his sovereignty by reason of having been charged with any crime. Accordingly, the Constitution and laws are as much for the protection of a woman who is suspected of the operation of a lewd house as they are for a citizen who is charged with the violation of no law. The decisions of our appellate courts authorizing evidence obtained unlawfully and in violation of the Constitution leave the aggrieved citizen with only two remedies, namely: (1) that of resorting to force and using whatever force is necessary in order to prevent the wrong, and (2) that of a civil action for damages as a result of the wrongful trespass. Whether because she was a woman pitted against two police officers, or for some other reason, the plaintiff here chose not to pursue the former course, but relied on the latter. There is nothing in the record to indicate why the officers did not procure a warrant for the search of the plaintiff's home and for her arrest, since it appears that they were informed of the complaint and instructed to go to the premises some seven hours before they actually made the search. It is significant that the plaintiff testified that, when she demanded of the officers their authority for trespassing in her home, they replied, "We are walking warrants." Neither of the police officers denied this statement.

Ofttimes, we fear, public servants in all branches of our government—the judicial, the legislative, and the executive—are inclined to forget that they are servants and trustees of the people and at all times amenable to them. It is unnecessary here to detail again the history of our Bill of Rights in both the Federal and State Constitutions. It is enough to point out that these documents contain the gems of liberty which set the people of this country apart from the people of all other nations as enjoying rights, privileges, and immunities not accorded to others. They must be preserved in the last analysis by our courts.

The trial court erred in overruling the motion for a new trial on the general grounds.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*