[No. 36019. En Banc. May 29, 1963.]

THE CITY OF TACOMA, *Respondent*, v. ALICE HORTON, *Appellant.*\*

*Jack E. Tanner*, for appellant.

*Marshal McCormick, Robert R. Hamilton*, and *Francis H. Chapin, Jr.*, for respondent.

PER CURIAM.—July 1, 1960, the residence of a Sergeant Mathis, at 1615 South L Street, was under surveillance by a Tacoma police officer. The sergeant was seen leaving the premises about 3:05 a.m. He was questioned, but not arrested, by the police officer (relative to a matter not in issue in this appeal), who took the sergeant to the police station for further interrogation.

\* Reported in 382 P. (2d) 245.

At about 5 a.m., Sergeant Mathis took the police officer to his residence, unlocked the door, and invited him to enter. The police officer had a search warrant for the premises, but it was not served. Upon entering the premises, the police officer saw Alice Horton in bed and asleep with a Sergeant Edwards, who he knew was not her husband. When he questioned them, Sergeant Edwards admitted that, as a result of Alice Horton's invitation to him at the Congo Bar, he had had intercourse with her for an agreed financial consideration. The statement was denied by Alice Horton. She further stated that she was a temporary guest of Sergeant Mathis. She was arrested and charged with disorderly conduct, in violation of the city ordinance, in that she had solicited and practiced prostitution in the city of Tacoma.

Alice Horton entered a plea of not guilty. She made a pretrial motion, supported by affidavit, to suppress the evidence, contending that the search of the premises was illegal. The motion was denied. She waived a jury, and the cause was tried to the court. The motion to suppress was renewed at the beginning of the trial. Defense counsel offered to read to the trial court the former motion and affidavits, which had been considered by the judge who heard the motion calendar. The trial court reserved its ruling on the motion.

The plaintiff called as witnesses the Tacoma police officer and Sergeant Edwards, who testified substantially as above indicated. When the police officer was asked whether he had a search warrant for the premises at the time in question, he answered: "Yes, we had a warrant, but we never made use of it. We didn't have to." The plaintiff rested. The motion to suppress was renewed, and denied as follows:

". . . I think the evidence shows that this man who let them in had evidence of possession. He had the key to the place. . . . Apparently they walked in with the person in possession and then saw this act being committed. The Court will deny the motion."

The defendant did not offer herself as a witness; nor was any evidence offered to establish a defense.

The court found the defendant guilty of disorderly conduct, and sentenced her to 90 days in the county jail (30 days to be suspended upon good behavior). The defendant has appealed.

Appellant's sole contention on appeal is that the search was illegal and that the court erred in refusing to suppress the evidence. We do not agree.

■ The pretrial motion to suppress the evidence was denied. The motion and the affidavits, together with the oral testimony, were again considered by the judge who tried the case, and the motion was again denied. Neither the written motion nor the affidavits are in the record on appeal. Without the benefit of the evidence upon which the trial court denied the motion to suppress, we must assume that the evidence which the court considered was sufficient to establish the legality of the entry. See *Pierce Cy. v. King*, 48 Wn. (2d) 43, 46, 290 P. (2d) 462 (1955); *Whittaker v. Weller*, 21 Wn. (2d) 716, 721, 152 P. (2d) 957 (1944); *Alexiou v. Nockas*, 175 Wash. 142, 143, 26 P. (2d) 619 (1933); *Olson v. Hoar*, 174 Wash. 696, 698, 26 P. (2d) 86 (1933); *In re Jordan's Estate*, 171 Wash. 624, 630, 18 P. (2d) 855 (1933).

Under these circumstances, we do not reach the alleged merits of the appeal.

The judgment and sentence is affirmed.

DONWORTH, J. (dissenting)—The per curiam opinion fails to pass upon two important questions of constitutional law (based upon the constitution of the United States and also on our state constitution) which are presented by the record in this case.[1]

---

[1] The per curiam opinion holds that: ". . . Without the benefit of the evidence upon which the trial court denied the motion to suppress, we must assume that the evidence which the court considered was sufficient to establish the legality of the entry."

As will appear from the portions of the record set forth in this dissent, the trial court decided that issue upon the oral testimony of the arresting officer.

The situation is the same as in *State v. Michaels*, 60 Wn. (2d) 638, 374 P. (2d) 989 (1962), in which the majority opinion stated:

"In the case before us, the circumstances of the arrest and search

I dissent because these questions have been properly raised by appellant and, in my opinion, cannot and should not be ignored.

In order to understand these problems, it is necessary to review the proceedings had at the trial in the superior court, which tried the case de novo (without a jury) on appeal from the police court.

Appellant was originally tried and convicted in the police court of the city of Tacoma for the alleged violation of certain provisions of the city ordinances forbidding the solicitation and practice of prostitution. Another charge of unlawful cohabitation was abandoned by the city for lack of evidence.

At the commencement of the trial in the superior court, appellant's counsel renewed a motion to suppress the evidence. In answer to counsel's inquiry as to whether the court wished to hear argument at that time, the trial judge said:

"The Court: Maybe it would be better to hear the testimony first, and you reserve your motion. The Court will reserve, and the record may show you have renewed your motion."

The city then produced as its first witness a police lieutenant, the head of the morals detail, who testified that he had known appellant for some time and that she was a married woman. He was asked about being at 1615 South "L" street about 5 a.m. on July 1, 1960. He then testified:

were disclosed by the testimony of the arresting officers, which is found in the statement of facts. The state does not contend that the affidavits revealed any material facts which were not disclosed by this testimony; and the attorney for the state stated in open court that, to the best of his knowledge, there were no additional pertinent facts contained in the affidavits. This being the case, the facts were before the trial court and are before us. Thus, we are in position to decide whether the motions were properly denied. In *State v. Gibbons*, 118 Wash. 171, 203 Pac. 390, this court adopted the federal rule, as announced in *Amos v. United States*, 255 U. S. 313, 65 L. Ed. 654, 41 S. Ct. 266, that if it appears from the direct or cross examination of the state's witnesses that the evidence was obtained unlawfully, it is the duty of the trial court, upon motion, to exclude it. See also, *State v. Dersiy*, 121 Wash. 455, 209 Pac. 837."

The foregoing statement is applicable to the instant case.

See, also *State v. Greco*, 52 Wn. (2d) 265, 324 P. (2d) 1086 (1958).

"Q. And how was it, Lt. Hickey, that you were at that address? A. I was in company with Sgt. Mathis, who rented the place. . . . Q. Where did you first meet Sgt. Mathis on that evening? A. I picked him up about a block and a half from the residence, at about 3:05 in the morning, in company with a Sgt. Carroll. Q. Do you mean by picking him up you placed him under arrest? A. No, I didn't place him under arrest. We were conducting a surveillance of the residence, and they were seen to leave this residence, and we stopped him to question them, and they came to the station with us for further questioning. Q. Did they come voluntarily? A. They did. Q. Did you have a discussion then with Sgt. Mathis? A. Yes, I did. Q. Did you ask him where he resided? A. I did that. Q. What did he tell you?"

After an objection was interposed, followed by argument to the court, the judge ruled:

"The Court: I don't think you can prove this ownership by hearsay. You're going to have to qualify it, and you're going to have to get some reason why it is admissible. Q. (by Mr. Chapin) Lieutenant, do you know where Sgt. Mathis is at this time? A. I believe he is presently overseas in the service of the country. Q. Did you return to the premises in question with Sgt. Mathis? A. Yes, I did, sir. Q. Did you enter said premises? A. I did. Q. And, specifically . . . Mr. Tanner: Your Honor, before we continue, may I have a continuing objection . . . The Court: All right, you have it. The Court understood we will give the facts, and then argue the motion. Proceed. Q. Who admitted you to the premises in question? A. Sgt. Mathis, by opening the door with a key he had in his possession."

We pause at this point in the discussion of the testimony because the reader of this opinion now has precisely the same information as to what was taking place inside the house at 1615 South "L" street as Lieutenant Hickey, the arresting officer, had when Sergeant Mathis put the key in the lock, to wit, *no* information whatever.

Lieutenant Hickey described what he saw after entering the house, as follows:

"Q. And after your entry into said premises, Lieutenant, what did you observe? A. Just inside the door was Alice T. Horton, in bed with a serviceman by the name of Ed-

wards. Q. And, Lieutenant, did Mr.—Sgt. Mathis offer any resistance to your being admitted? A. None whatsoever. The Court: What did you say the serviceman's name was? A. (by the witness) Edwards. Q. (by Mr. Chapin) He [Sergeant Mathis] had a key to the premises, is that correct? A. He did, sir. Q. Did you talk to the two parties in question? A. Yes, we did. Q. That is, by the two parties I of course mean the defendant and Mr. Edwards. A. We talked to both of them and took a statement from Edwards. Q. Did you talk to Sgt. Edwards in the presence of the defendant? A. Yes, we did."

He then testified that appellant denied that sexual intercourse with airman Edwards had taken place, but that the latter stated to the contrary.

In concluding his direct testimony, Lieutenant Hickey stated:

"Q. Lieutenant, were there any statements made by the defendant concerning her—the reason she was in this particular establishment? How she happened to be there? A. To the best of my knowledge, Alice T. Horton just stated that she was staying there with Sgt. Mathis temporarily. Q. Staying there with Sgt. Mathis? A. Temporarily."

On cross-examination, Lieutenant Hickey admitted that he did not make the arrest of appellant with a warrant.

The only other witness who testified at the trial was airman Edwards. He stated that he had met appellant at the Congo Bar and had asked her to take him home with her, which she did. He further stated that he paid her $10 and that he had had sexual relations with her at the South "L" street address. As to the entry of the police into the house, he testified:

"Q. Did the police department arrive at that address some time later? A. Yes. Q. And who admitted them to the residence? A. I don't know. Q. Did you? A. No. Did the defendant? A. I don't know. I was asleep."

The city rested its case and appellant offered no evidence but renewed her motion to suppress all the evidence

". . . on the grounds that it was obtained by illegal search and seizure, in violation of Article I, Section 7, of the Washington State Constitution, also, the statute 10.79-

.040, and also under the Constitution of the United States. I think it is apparent to the Court at this time that other than what the police officer, Lt. Hickey, actually discovered until after he entered the premises at 1615 L Street, nothing had taken place in his presence. . . ."

After lengthy argument by appellant's counsel, the trial court denied the motion to suppress and found her guilty of soliciting and practicing prostitution.

Later, the matter was reargued by appellant's counsel on her motion for arrest of judgment, or, in the alternative, for a new trial. After further consideration, the trial court denied the motion, stating that the arresting officer was legally in the premises at the time of the arrest.

The court then found appellant guilty as charged and sentenced her to confinement in the city jail for 90 days, to be suspended after 60 days service, conditioned on her good behavior.

The fourth amendment to the United States Constitution reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 1, § 7, of our state constitution provides:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

In 1921, the legislature enacted the following statute:

"It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling house or place of residence without the authority of a search warrant issued upon a complaint as by law provided." RCW 10.79.040.

and declared that violation thereof by any policeman or other peace officer was a gross misdemeanor.

Appellant contends that all the evidence was obtained by illegal search and seizure because (1) the police had neither a right to enter the Mathis premises without a war-

rant nor a right to arrest appellant without a warrant, and (2) none of the evidence would have been obtained had not the police made the illegal entry and arrest.

If either the search or the arrest were unlawful, then the evidence objected to should have been excluded and the city's complaint dismissed.

The only testimony in the record relating to appellant's right to be in the house at 1615 South "L" street at the time of her arrest shows that she was then a guest of Sergeant Mathis, who was renting the house.

The United States Supreme Court, in *Jones v. United States*, 362 U. S. 257, 4 L. Ed. (2d) 697, 80 S. Ct. 725, 78 A.L.R. (2d) 233 (1960), held that:

". . . anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. . . ."

Since appellant, at the time the arresting officer was admitted by Sergeant Mathis, was living in the house as his guest, she was lawfully on the premises, and, under the holding in the *Jones* case, she has standing to have the merits of her motion to suppress the evidence passed upon by the court. See, also, *Klee v. United States*, 53 F. (2d) 58 (1931), and *Eng Fung Jem v. United States*, 281 F. (2d) 803, 86 A.L.R. (2d) 981 (1960).

The law regarding search without a warrant is set forth in *State v. Greco*, 52 Wn. (2d) 265, 324 P. (2d) 1086 (1958):

"Because a search is made without a warrant does not of itself prove an invasion of the appellant's constitutional guaranty against unreasonable search and seizure. 79 C.J.S. 828, § 65. The necessity for a search warrant may be waived. 79 C.J.S. 816, § 62. The law respecting the waiver of immunity to search was recently summarized by United States District Judge Ben C. Dawkins, Jr., in *United States v. Kidd*, 153 F. Supp. 605 (July, 1957), in the following paragraph:

"'It is fundamental, in the absence of a valid warrant either of arrest or for a search, that the burden of proving there was a truly voluntary and fully informed consent rests upon the Government. Such proof must be made by clear and positive evidence, and it must be established

that there was no coercion, actual or implied. The Government must show a consent that is unequivocal and specific, freely and intelligently given. If the consent actually given is made under compulsion, either "physical or moral", it may not serve to validate a search and seizure otherwise invalid for want of a proper warrant. No general exploratory search and seizure of either persons, houses, or effects can ever be justified either with or without a warrant.' " (Footnotes omitted.)

See, also, *State v. Reed*, 56 Wn. (2d) 668, 354 P. (2d) 935 (1960). In the absence of a valid warrant, the burden is upon the state to show that the evidence was obtained lawfully.

Respondent's evidence in this case does not meet the test adopted in the two recent decisions just cited. The record is devoid of any indication as to what caused Sergeant Mathis to allow the policeman to enter.

The circumstances leading up to the entry as heretofore related included stopping Sergeant Mathis on the street at 3:05 in the morning after he was seen leaving the premises which were under police surveillance, questioning, a trip to the police station, further questioning, a return to the premises 2 hours later in the company of a police officer, and the officer's admittance into the house by Sergeant Mathis. Sergeant Mathis did not testify at the trial.

From what appears in the record, it could as well be implied that entrance "was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." *Johnson v. United States*, 333 U. S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948). To imply voluntary consent, is to ignore the constitutional safeguards to the right of privacy. A long list of decisions, both state and federal, are dealt with in an annotation found in 31 A.L.R. (2d) 1079, 1097, concerning implied coercion in submitting to a search arising from a demand by officers of the law. In *State v. Miles*, 29 Wn. (2d) 921, 190 P. (2d) 740 (1948), this court stated:

"Law officers are to be commended for their zealous efforts to secure testimony against violators of the law. But there is a regular and orderly way of doing this which

the officers should bear in mind. The ordinary person who is approached by an officer has respect for the authority of the officer, and will generally, through respect or fear, do whatever the officer commands to be done. And when an officer, without authority of law, violates the security of the person of an individual by demanding that he do something which by law he is not required to do, or uses coercion, then such an act of a person is not a free and voluntary act, but is the result of force by reason of the threatening and coercive attitude of the officer. . . ."

However, it is not necessary for appellant to show that coercion, actual or implied, existed. Under our holding in *State v. Greco, supra,* the burden of proving that the consent was voluntarily obtained rested upon the state.

Respondent failed to meet its burden of proving that the police were legally on the premises and the evidence obtained as the result of the search should have been excluded. The decision of the Supreme Court of the United States in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684, 84 A.L.R. (2d) 933 (1961), held that the exclusionary rule is an essential part of the fourth and fourteenth amendments to the United States Constitution and applies to state prosecutions as well as those brought in the federal courts. This court has, for many years prior to the decision in *Mapp v. Ohio, supra,* held to the exclusionary rule under Art. 1, § 7, of our state constitution. See the following cases and others cited therein: *Tacoma v. Houston,* 27 Wn. (2d) 215, 177 P. (2d) 886 (1947); *State v. Miles, supra; State v. Cyr,* 40 Wn. (2d) 840, 246 P. (2d) 480 (1952); *State v. Rousseau,* 40 Wn. (2d) 92, 241 P. (2d) 447 (1952); *State v. Smith,* 50 Wn. (2d) 408, 314 P. (2d) 1024 (1957); *State v. Greco, supra; State v. Michaels,* 60 Wn. (2d) 638, 374 P. (2d) 989 (1962). Since appellant had a constitutional right to have the only evidence which could sustain a conviction suppressed, the complaint should have been dismissed. I would, therefore, reverse the conviction with directions to do so.

Even assuming, arguendo, that the police entered the premises lawfully, they had no right to arrest appellant, and therefore they had no right to ask the questions by

means of which they obtained all of their "evidence" in this case. The trial court upheld the challenge to the validity of the arrest in the following manner:

"Mr. Tanner: I am arguing that at this time there was no right to arrest. There is no evidence submitted here of the right to arrest. The Court: He [Lieutenant Hickey] has testified that he went in there, and this man was in bed with this woman. That's indecent conduct, if nothing else, and that is a misdemeanor. Mr. Tanner: That's not included within the offense charge. The Court: That may be true, but they don't have to prosecute for a particular thing. She was in bed with a man not her husband. That's indecent conduct, so that's been comitted. . . ."

Later, after hearing further argument, the trial court said:

" . . . I think the evidence shows that this man who let them in had evidence of possession. He had the key to the place. The testimony of Lt. Hickey was that this woman was staying with Sgt. Mathis temporarily. I think that is a prima facie showing he was in possession of it. Apparently they walked in with the person in possession and *then saw this act being committed.* The Court will deny the motion." (Italics mine.)

While the trial court was correct in stating that the city does not have to prosecute for a particular offense, it is a non sequitur to thereby conclude that the arrest was made for some offense not charged. The arrest could be legal only if it were for a misdemeanor being committed in the presence of the arresting officer, since it is admitted that no warrant for an arrest was used. Assuming that the conduct described by the trial court constituted a misdemeanor, still it could not retroactively become the basis upon which Lieutenant Hickey made his arrest.

Appellant was charged on two counts, soliciting and practicing prostitution and unlawful cohabitation. Respondent admitted their failure to establish the latter, stating, after all the testimony had been presented, "There was no evidence in that regard, and the City concedes on Count II." Neither of the crimes charged was committed in the arresting officer's presence. Lieutenant Hickey, in his testimony,

gave no other reason for arresting appellant. A search incident to a lawful arrest is valid, but no lawful arrest was established in this case.

The position of appellant is stronger than has already been indicated. In my opinion, no misdemeanor was even committed in the presence of the arresting officer.

The undisputed testimony of the arresting officer (which has been hereinbefore set forth) is that just inside the front door he saw appellant (whom he knew to be a married woman) and airman Edwards (who was not her husband) in bed together—both of them sound asleep. That was all he saw.

The only basis for holding that appellant's conduct was "indecent," and that she committed a misdemeanor in the officer's presence, is the bare statement of the trial judge. While probably no one would approve her conduct from a moral standpoint, she could not be held guilty of committing a misdemeanor in the absence of a statute or ordinance defining the misdemeanor and making her conduct a violation thereof.[2]

In the city's brief in this case, it is stated:

"In the case at bar, the trial judge found correctly that the police officers had observed a misdemeanor committed in their presence; that is, that the defendant was in bed with a man not her husband, which constitutes indecent conduct under the disorderly conduct ordinance of the City of Tacoma."

The Tacoma City Code (which is an official codification of its ordinances) contains a definition of "disorderly persons." Section 8.12.010 thereof provides:

"The following persons are hereby declared to be disorderly persons:

" . . .

"Any person who shall use, in the presence of any other person, vulgar, profane, obscene or indecent language, *or who shall conduct himself or herself in an indecent manner*." (Italics mine.)

---

[2] As this court once said in another context: ". . . We think the lower court was in error. The guide for its rulings is found in the code of legal obligations, rather than in the moral code." *Baasch v. Cooks Union*, 99 Wash. 378, 169 Pac. 843.

The italicized portion of the ordinance is, in my opinion, so vague and indefinite as to be violative of the due process clause of the Fourteenth Amendment. The language is so lacking in definitely specifying when a person is or is not conducting himself "in an indecent manner" that precisely the same conduct could be held by *one* judge to be a misdemeanor under this ordinance and by *another* judge to constitute no offense whatever.

In the instant case the trial court held that a married woman, discovered by a police officer asleep in a private home at 5 a.m. in the same bed with a man (not her husband) who was likewise asleep, was committing a misdemeanor in the officer's presence.

The following cases involving similar acts support my conclusion that appellant committed no offense in the arresting officer's presence: *Adair v. Williams*, 24 Ariz. 422, 210 Pac. 853, 26 A.L.R. 278 (1922); *Goodwin v. Allen*, 89 Ga. App. 187, 78 S. E. (2d) 804 (1953); *Hart v. State*, 195 Ind. 384, 145 N. E. 492 (1924).

In further support of my conclusion that the ordinance is void for vagueness and indefiniteness, I call attention to the following cases:

*Commonwealth v. Isenstadt*, 318 Mass. 543, 549, 62 N. E. (2d) 840 (1945), in which the Massachusetts court, in construing a Massachusetts statute on censorship of certain printed material, determined that the statute did not condemn the mere use of "obscene, indecent or impure" language, but the statute condemned only publications which could be said to have a certain effect upon the reading public. The court held that:

"[a] book is 'obscene, indecent or impure' within the statutory prohibition if it has a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desire. . . ."

In the course of its opinion, the court made the following observation:

"Although in their broadest meaning the statutory words 'obscene, indecent or impure' might signify offensive to refinement, propriety and good taste, we are convinced

that the Legislature did not intend by those words to set up any standard merely of taste, even if under the Constitution it could do so. Taste depends upon convention, and sometimes upon irrational taboo. It varies 'with the period, the place, and the training, environment and characteristics of persons.' *Reddington v. Reddington*, 317 Mass. 760,765. *A penal statute requiring conformity to some current standard of propriety defined only by the statutory words quoted above would make the standard an uncertain one, shifting with every new judge or jury. It would be like a statute penalizing a citizen for failing to act in every situation in a gentlemanly manner. Such a statute would be unworkable if not unconstitutional, for in effect it would 'license . . . the jury to create its own standard in each case,' ex post facto. Herndon v. Lowry, 301 U. S. 242, 263. . . .*" (Italics mine.)

*Cramp v. Board of Public Instruction*, 368 U. S. 278, 7 L. Ed. (2d) 285, 82 S. Ct. 275 (1961), involved the validity of a loyalty oath requirement for state and municipal employees. The form of the oath was challenged by a school teacher on the ground that it was so vague and indefinite as to constitute a denial of due process. The particular language involved was the clause reading "that I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party." The Supreme Court held that the statute requiring the execution of the oath was unconstitutional on the ground above mentioned, saying:

"We think this case demonstrably falls within the compass of those decisions of the Court which hold that ' . . . a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Connally v. General Construction Co.*, 269 U. S. 385, 391. 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' *Lanzetta v. New Jersey*, 306 U. S. 451, 453. 'Words which are vague and fluid . . . may be as much of a trap for the innocent as the ancient laws of Caligula.' *United States v. Cardiff*, 344 U. S. 174, 176. 'In the light of our decisions, it appears upon a mere inspection that these general words and phrases are so vague and indefinite that

any penalty prescribed for their violation constitutes a denial of due process of law. It is not the penalty itself that is invalid but the exaction of obedience to a rule or standard that is so vague and indefinite as to be really no rule or standard at all.' *Champlin Refining Co. v. Corporation Commission of Oklahoma,* 286 U. S. 210, 243."

*City of Chester v. Elam,* 408 Pa. 350, 184 A. (2d) 257 (1962), involved a conviction for the violation of a section of the city ordinance defining disorderly conduct as follows:

" . . . 'Any person who creates or participates in a disturbance, or in a disorderly assembly, in any street, house or place in the City shall upon conviction before the Mayor, committing magistrate or any Alderman of the City, be fined not less than $5, nor more than $300 for any one offense, recoverable with costs together with judgment of imprisonment not exceeding 90 days, if the amount of such judgment and costs shall not be paid.' . . ."

The Pennsylvania court held that this section was void for indefiniteness and stated its reasons as follows:

"This leads to an even more basic objection to the statute. In order to comply with the due process clauses of both the Pennsylvania Constitution and the Constitution of the United States, a criminal statute must be sufficiently certain and definite to inform the accused of the acts which the statute is intended to prohibit and which will render him liable to its penalties. 'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' *Lanzetta v. State of New Jersey,* 306 U. S. 451, 83 L. Ed. 888, 59 S. Ct. 618 (1939). *Commonwealth v. Klick,* 164 Pa. Superior Ct. 449, 65 A. 2d 440 (1949); *Commonwealth v. Unkrich,* 142 Pa. Superior Ct. 591, 16 A. 2d 737 (1940). See generally, 14 Am. Jur., Criminal Law, § 19. From the wording of the ordinance in question, there is no standard by which 'men of common intelligence' could determine what activities will result in the prescribed sanctions. It is in essence a dragnet statute which permits the arrest of persons who are acting in a manner which does not meet the approval of the authorities. See *State v. Doe,* 31 U. S. Law W. 2002 (N. H. Sup. Ct. (1962)); Model Penal Code § 250.2 (Proposed official

draft, May 4, 1962), and comments (Tent. Draft No. 13, April 19, 1961), and Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1 (1960)."

See, also, the concurring opinion of Mr. Justice Harlan in *Garner v. Louisiana*, 368 U. S. 157, 7 L. Ed. (2d) 207, 82 S. Ct. 248 (1961).

## CONCLUSION

The length of this dissenting opinion has been necessary because the per curiam opinion has not discussed the constitutional questions raised by appellant. I have endeavored to deal with them thoroughly and to demonstrate that her contentions have merit and should be sustained.

This court has said:

"The rights of individuals as guaranteed by our constitution, are not to be lightly considered. The framers of our constitutions, Federal and state, realized that laws affecting the liberty of men must be safeguarded, since the wisdom of the ages has taught that unrestrained official conduct in respect to depriving men of their liberties would soon amount to a total loss of those liberties. Where procedure relating to arrest and search is provided, it must be strictly followed." *State v. Miles*, 29 Wn. (2d) 921, 926, 190 P. (2d) 740 (1948).

Appellant has standing to claim her constitutional rights against unreasonable search and seizure under both the fourth amendment to the United States Constitution and Art. 1, § 7, of our state constitution. Furthermore, in my opinion, respondent has failed to establish the legality of the entry of the arresting officer into the house in which appellant was staying. Even if the entry of the arresting officer were held to be legal, the arrest was not based upon a misdemeanor committed in his presence. Therefore, the arrest was not legal. Accordingly, all the evidence which the city obtained as a result of these violations of her constitutional rights should have been suppressed.

". . . Thus the Government quite properly stakes the right to arrest, not on the informer's tip and the smell the officers recognized before entry, but on the knowledge that she was alone in the room, gained only after, and wholly

by reason of, their entry of her home. It was therefore their observations inside of her quarters, after they had obtained admission under color of their police authority, on which they made the arrest.

"Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." *Johnson v. United States*, 333 U. S. 10, 16, 92 L. Ed. 436, 68 S. Ct. 367 (1948).

If the courts refuse to pass upon the constitutional claims of persons accused of public offenses when properly raised, the bill of rights which the people have declared to be the supreme law of the land becomes a mere rhapsody of words.

For the reasons stated above, I would reverse the judgment entered by the trial court with directions to dismiss the complaint.

ROSELLINI, J., concurs with DONWORTH, J.