## BAILEY vs. RAGATZ.

*December 1 — December 17, 1880.*

*Rights of policemen.   When guilty of unlawful entry of private house.*

1. A policeman has no right to rouse up the family of a respectable citizen in the night, and force himself into the house, upon the mere statement to him of any person that he has heard that a woman of bad character is stopping at the house.

2. In an action for a *breach of the plaintiff's close*, the evidence in his behalf tended to show that defendant, a policeman in the city where both parties resided, came to plaintiff's house in the night, after the family had

retired and the lights were extinguished, and demanded entrance, with a threat to burst open the door if it were not opened; that plaintiff rose and opened the door, and defendant entered, but without plaintiff's permission; that the reason assigned by defendant for entering the house was, that he expected to find there, unlawfully cohabiting, a certain woman of alleged bad character, and a certain boy (neither of them a member of plaintiff's family); that he had no warrant, and no intention of making an arrest, but claimed that, if the woman was there, he "wanted to see her and give her a good talking to," etc.; that in fact neither the boy nor the woman was there, and the boy had never been there; that defendant had never heard anything against the character of plaintiff's house, except a statement made to him that night, by the boy's brother, that the woman in question "stopped there," which was not true; and that defendant in fact knew that the boy was not there. *Held*, that it was error to order a nonsuit.

APPEAL from the Circuit Court for *Winnebago* County. The case is thus stated by Mr. Justice TAYLOR:

"This was an action for a breach of the plaintiff's close by the defendant. The evidence tended to show that on the night of the 5th of December, 1879, between the hours of nine and ten o'clock, and after the plaintiff and all his family had retired for the night, and the lights in the house were extinguished, the defendant came to the kitchen door and knocked; that one of the inmates, a woman, asked, "Who is there?" that no answer was made; that the question was repeated, and no reply given; and that, when asked a third time, defendant replied, 'I want to get in.' He was then asked to tell who he was, and he replied, 'I'll soon let you know who I am; I'll burst the door open if you don't open it right away.' At that time the plaintiff himself got up, and said, 'You had better not burst the door through.' Plaintiff then made a light, and came to the door, and saw that the defendant was a policeman, opened the door, and the defendant came in. Plaintiff then said, 'Now you are in, what do you want?' Defendant replied, 'I was informed you kept a house of illfame here, and I am in search of a young woman formerly of Green Bay, and I expect to find her here with a certain young

boy from twelve to fourteen years old, in bed together.' He claimed that he was sent there by certain parties. He said if he had found the girl there, he wanted to see her and give her a good talking to, and tell her to leave the boys alone. That was what he wanted to see her for. He stayed in the house about ten minutes, and went away. The evidence also shows that plaintiff's wife was frightened at the noise at the door, and supposed burglars were attempting to get into the house.

"The excuse the defendant himself gives for coming to the house and disturbing the family at that time of night, was, that he was a policeman of the city of Oshkosh; that the brother of the young boy who was supposed to be with the woman from Green Bay, had requested him to go with him to find the boy and bring him home; and that this brother told him, just before they called at the house, that he had heard that the girl stopped at the house of the plaintiff, and they thought the boy was there with her. The evidence also shows that the defendant had never heard anything against the good character of the plaintiff or his family, or of the plaintiff's house, except what the brother told him he had heard that night. Neither the woman nor the boy was in the plaintiff's house. The boy never had been in the house at any time, and the girl had been there two or three times to get some washing done by a person residing in the plaintiff's family; and the evidence tended to show that the family had no knowledge of the bad character of the girl. The evidence of the boy, which was uncontradicted, showed that at the time the defendant was at the plaintiff's house, he was at work in the store where he was employed, and remained there at work until after ten o'clock that evening. He also testifies that a day or two after the 5th of December, defendant told him he knew that he (the boy) was not at the house of plaintiff at the time he went there; and that defendant had several times before that asked him if he could not get that woman for him some night. Upon this evidence the learned circuit judge ordered that the

plaintiff be nonsuited, and judgment was entered accordingly, from which the plaintiff appeals."

For the appellant there was a brief by *Jackson & Thompson*, and oral argument by *Mr. Thompson*.

For the respondent there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*.

TAYLOR, J.   We are clearly of the opinion that the learned judge erred.   There was certainly some evidence to go to the jury upon the question as to the lawfulness of the defendant's acts upon that evening.   The nonsuit can only be sustained upon the ground that a policeman in one of our cities has the right to rouse up the family of any respectable citizen. in the night, after they have retired, and force himself into his house, upon the mere statement of any person that he has heard that a woman of bad character is stopping at such house.   We do not wish to be understood as saying that a policeman would not have been justified in calling, in a proper manner, at the house of a respectable citizen for the purpose of obtaining information, and that under some circumstances he would not be justified in calling for such information after the family had retired for the night, if the circumstances were such as required immediate action.   If, in this case, the defendant had good reason to believe that a boy of fourteen or fifteen years was at the house with a lewd woman, and the father or brother of such boy had requested him to go there for the purpose of ascertaining the fact, and bring him away if he found him there, the defendant would have been justified in calling up the family to make inquiry, and in searching the house, unless forbidden by the occupant.   If forbidden, and the policeman still insisted on making search, he would undoubtedly be a trespasser unless he found the boy in the house.   But, in this case, the learned judge said that it made no difference, in his opinion, that the defendant knew the boy was not in the house of the plaintiff when he aroused up the

Bailey vs. Ragatz.

family and entered the house. In this we think the learned judge was clearly mistaken. The defendant had no right to disturb the plaintiff's family for the mere purpose of gratifying his inquisitiveness in regard to the whereabouts of this supposed lewd woman on that particular evening. He had no knowledge that the woman was in the house, and no such information on the subject as would justify him in disturbing the peace of plaintiff's family after they had gone to bed, even admitting that it was his right and duty to inform himself of her whereabouts. If the boy was not with her on that night, and he knew that fact, there was no urgent necessity for calling at the plaintiff's house at an unusual time of night, and disturbing his family, for the mere purpose of inquiring whether the plaintiff harbored a lewd woman. It is very questionable whether the defendant would, by virtue of his office as policeman, be justified in demanding an entrance into the plaintiff's house in the night-time, and after the family had retired, even though the boy he claims he was looking for had been there. Having no warrant or authority for his arrest, we think he would not have been justified in going further than making a proper inquiry upon the subject, and requesting, in a proper manner, to be permitted to enter the house to make search. He was not in a position, to demand an entrance. And as there is evidence tending to prove that the defendant demanded an entrance into the house, and that he entered against the will of the plaintiff, the court was not justified in saying, as a matter of law, that the defendant lawfully entered the house of the plaintiff. This was, at least, a question of fact for the jury, and not one of law for the court.

We do not think that the law gives either an implied or express license to a policeman to demand an entrance, or to enter into the house of a respectable citizen at night, by way of the kitchen door, after the family have retired, for the purpose of making insulting inquiries as to the character of the house or its inmates; and especially when such policeman has no in-

Bailey vs. Ragatz.

formation, either by hearsay or otherwise, that the character of the house or its inmates is bad. There can be no presumption of law or fact that the plaintiff, either expressly or by implication, licensed the defendant to arouse his family after they had retired, by knocking upon his kitchen door and demanding an entrance, by virtue of his authority as a policeman of the city of Oshkosh. After a citizen closes his doors at night, and retires with his family, the law does not imply a license to any one to enter his premises and disturb the repose of his family, except for some reason which fully justifies such disturbance and entry. When the safety of the family or any of its members requires it, the law will presume a license to enter, and there are undoubtedly many other things which would justify such entry; but we are unable to see anything in the evidence in this case which justified the defendant in disturbing the plaintiff and his family, and demanding an entrance into his house. The question whether the defendant finally entered the house by the express or implied permission of the plaintiff, was a question of fact for the jury; and the purpose for which he demanded the entrance was also a question of fact for the jury, and not of law for the court. The facts as stated by the plaintiff and his witnesses, excluding the testimony of the defendant, do not show that the defendant was fully justified in doing what he did on the night in question. And if the facts as stated by the defendant would be a full justification, which we very much doubt, still the case should have.gone to the jury, as it is the province of the jury, and not of the court, to determine what is the fact, where there is any conflict in the testimony.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.