[Civil No. 2018. Filed December 8, 1922.]

[210 Pac. 853.]

CONSUELO R. ADAIR and Her Husband, TOMAS ADAIR, Appellants, v. BILL WILLIAMS and OSCAR McCLOUD, Police Officers of the City of Phoenix, Arizona; GEORGE O. BRISBOIS, Chief of Police of the City of Phoenix, Arizona, and NATIONAL SURETY COMPANY, a Corporation, Appellees.

1. APPEAL AND ERROR—ERROR BASED ON ORDER SUSTAINING DEMURRER TO COMPLAINT NOT CONSIDERED, UNLESS FINAL JUDGMENT OF DISMISSAL ENTERED.—Where final judgment of dismissal was not entered on a general demurrer to the complaint, an assignment of error based thereon will not be considered on appeal.

2. FALSE IMPRISONMENT—COMPLAINT HELD SUFFICIENT.—In an action *for false imprisonment*, a complaint, alleging that plaintiffs, husband and wife, were arrested in the night-time while sleeping together in the bedroom of their home, was sufficient to show the

lawfulness of their conduct at the time of their arrest, and to require the defendants to justify.

3. ARREST—FOR MISDEMEANOR BY A PEACE OFFICER WITHOUT WARRANT ONLY WHEN COMMITTED OR ATTEMPTED IN HIS PRESENCE.—Under Penal Code of 1913, section 854, a peace officer is authorized to make an arrest for a misdemeanor only when he is armed with a warrant or when the crime is committed, or attempted in his presence, and such arrest without a warrant cannot be justified upon a reasonable belief that the person arrested was at the time thereof violating a city ordinance, or upon probable cause to believe such fact, or upon it reasonably appearing to the officer that such an offense was being committed.

4. ARREST—PEACE OFFICER NOT AUTHORIZED TO ENTER PRIVATE HOUSE FOR PURPOSE OF OBSERVING MISDEMEANOR AND MAKE ARREST WITHOUT WARRANT.—While a peace officer is authorized to enter without invitation or warrant of arrest a house or inclosure in private ownership under circumstances such as to give him knowledge through his senses that a breach of the peace or other misdemeanor is being committed or attempted, and there to arrest the offenders for such crime, such officer is not justified, either in making an entry into any such place for the mere purpose of placing himself in a position where he may observe the commission of the misdemeanor, or thereupon making an arrest therefor.

5. FALSE IMPRISONMENT—EVIDENCE OF PROBABLE CAUSE INADMISSIBLE IN MITIGATION OF ACTUAL DAMAGES.—In an action for false imprisonment, evidence of reasonable and probable cause for defendant's belief in plaintiff's guilt, or that defendant acted under an honest belief that he was within his legal rights, and with intent only to enforce the law, is admissible in mitigation of punitive damages, but where plaintiff seeks only actual damages, such evidence is not admissible in mitigation thereof.

6. FALSE IMPRISONMENT—MALICE NOT ESSENTIAL.—Actual malice or bad motive are not essential elements to constitute the trespass of false imprisonment, and all that is necessary to make out the charge is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard.

7. FALSE IMPRISONMENT—PUNITIVE DAMAGES AWARDED FOR MALICIOUS ACTS.—In an action for false imprisonment, if it be shown that defendant acted recklessly, insultingly or willfully and maliciously, with a design to oppress and injure, punitive damages may be awarded.

8. FALSE IMPRISONMENT—PROOF OF ABSENCE OF MALICE IN MITIGATION OF PUNITIVE DAMAGES ADMISSIBLE UNDER GENERAL DENIAL.—In an action for false imprisonment, defendant may, under a general denial and without special plea, adduce all facts to disprove and

controvert the case made by plaintiff, including the malicious intent and the acts charged proceeding from evil purpose or motive which constitutes the basis for the claim of exemplary damages.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Judgment reversed and cause remanded for new trial.

Messrs. Moore & Garcia, for Appellants.

Mr. R. William Kramer, Mr. Martin Le Boutiller, and Mr. J. E. Craig, for Appellees.

FLANIGAN, J.—This action was brought by the appellants, Consuelo R. Adair and her husband, Tomas Adair, against certain police officers of the city of Phoenix, appellee Brisbois as chief of police of said city, and the National Surety Company as surety upon the official bond of said Brisbois, to recover the damages alleged to have been sustained by the appellant Consuelo R. Adair, as the result of her unlawful arrest and imprisonment by said officers. The complaint alleges that at the time of such arrest and imprisonment Brisbois was the chief of police of said city, and the defendants Williams, McCloud, Crowe, Sutherland and McCormick, police officers thereof; that Brisbois had given a bond, with the defendant National Surety Company as surety, to perform the duties of his office; that about 3 o'clock of the morning of November 24, 1920, while plaintiffs were sleeping together in their bedroom at their home in the city of Phoenix, the defendants Williams and McCloud entered said bedroom and displayed to plaintiffs their badges as police officers, and then and there accused plaintiffs of the public offense of "living together as husband and wife, openly and notoriously, without having been married," and of having committed said offense in the presence of said

officers, and thereupon arrested plaintiffs and took them to the police station of said city, and delivered them into the custody of the defendants Crowe, Sutherland and McCormick, likewise police officers as aforesaid; that the plaintiff Consuelo R. Adair was by the five last-named police officers then and there imprisoned, and unlawfully restrained of her liberty for the period of about thirty-six hours; that about 9 o'clock of the morning of said day defendant George O. Brisbois arrived at said police station, and ratified and approved the acts of his said deputies, or policemen, in making said arrest and accusations, and continued to unlawfully imprison said plaintiff against her will and protests of innocence for said period.

Circumstances in aggravation, attending the commission of these alleged unlawful acts, are set forth in considerable detail in the complaint. It is further alleged that in arresting and imprisoning Consuelo R. Adair the policeman acted without warrant.

The answer by all the defendants was a general demurrer to the complaint with a general denial of its allegations. In addition, the defendant officers pleaded specially as follows:

"That the arrest complained of in plaintiff's complaint was made by defendants Bill Williams, and Oscar McCloud, and by one J. P. Buck, who were each then and there a police officer of the city of Phoenix, upon probable cause, in that plaintiffs at the time of said arrest were inmates of a house commonly known as a disorderly house, frequented by persons of ill repute for chastity; that plaintiffs were known to be associates of such persons, and said arrest was made by said officers in the course of their duty to enforce the ordinances of the city of Phoenix against prostitution; that at the time of said arrest and imprisonment said defendants had reason to believe, and did believe, that said plaintiffs were violating said ordinances, and in making said arrest said defendants acted in good faith and upon said belief."

To this special plea the plaintiffs demurred upon the ground that it did not state facts sufficient to constitute a defense to the action, which demurrer was overruled. The general demurrer of the defendant National Surety Company was sustained, and that of the remaining defendants overruled. The cause proceeded to trial against the defendant officers before a jury. During the course of the trial the action was dismissed as to defendants Crowe, McCormick and Sutherland, and the jury returned a verdict in favor of the remaining defendants, Brisbois, Williams and McCloud, and judgment was entered accordingly. From this judgment the plaintiffs have appealed.

The first assignment of error is that the court erred in sustaining the general demurrer of the defendant National Surety Company. The record does not show that the court entered final judgment of dismissal pursuant to such order. Under the decisions of this court in *Navajo-Apache etc. Trust Co.* v. *Desmont*, 17 Ariz. 472, 154 Pac. 206, and *Hollingsworth* v. *Gazette Printing Co.*, 21 Ariz. 51, 185 Pac. 359, and our uniform practice since such decisions, no final judgment having been entered, the assignment cannot be considered.

In the argument of appellees to support the ruling of the court sustaining the demurrer interposed by the surety company the correctness of such ruling is contended for upon the ground, *inter alia,* that it does not allege the facts showing the arrest and subsequent imprisonment to have been unlawful other than by the statements of naked legal conclusions to that effect. It is also said that for all the complaint alleges the plaintiffs may have been arrested while violating in the presence of the officers an ordinance of the city of Phoenix, which provides that any person frequenting, loitering in, or continuing in, any

place of ill fame, bawdy-house or place of prostitution, is guilty of a misdemeanor.

The complaint alleges that the plaintiffs, husband and wife, were arrested in the night-time while sleeping together in their bedroom in their home in Phoenix. We think these allegations sufficiently show the lawfulness of plaintiffs' conduct at the time of the arrest, and required the defendants to justify. We do not think it was necessary for the plaintiffs to have gone further in stating facts from which it would appear that they were not at the time of the arrest engaged in committing a crime, or in the attempted commission of one, nor to negative all possible exceptions or conditions that might exist to characterize their conduct as unlawful. The arrest being unlawful, the detention thereafter without warrant was necessarily unlawful. The defendant Brisbois, as the complaint alleges, after learning of the arrest "continued to unlawfully imprison said plaintiff against her will and protests of innocence" for said period, thereby making himself a party to the alleged unlawful conduct by actively participating therein.

The court gave the following instructions to the jury:

"I instruct you that a police officer in the city of Phoenix is protected in making an arrest of any person or persons who may be found by such officer to be at the time violating any said ordinances without having a warrant therefor, and is further justified in making such arrest if the circumstances at the time are such as to justify in the mind of the officer exercising his discretion a reasonable belief that such person is at the time violating any such ordinances. In other words, a police officer is protected in making an arrest if at the time of the arrest there is probable cause to believe that such person is at the time of said arrest violating any such ordinance."

"I further charge you that a police officer in the discharge of his duty is not bound to know as a fact

that a crime is actually being committed. He is protected if the circumstances at the time are sufficient to make it reasonably appear to such officer that such offense is being committed. If in this case, therefore, you find from the evidence that the officers making the arrest of the plaintiffs on the morning of the 24th of November, 1920, had reasonable ground to believe from all the facts and circumstances known to them that plaintiffs were violating any of said ordinances of said city of Phoenix, then they were justified in making said arrest, and your verdict must be for the defendants.''

The giving of these instructions is assigned as error.

Section 854 of the Penal Code reads as follows: ·

''A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

''(1) For a public offense committed or attempted in his presence.

''(2) When a person arrested has committed a felony, although not in his presence.

''(3) When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

''(4) On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

''(5) At night, when there is a reasonable cause to believe that he has committed a felony.''

As the violation of an ordinance of the city of Phoenix could constitute no more than a misdemeanor, it is apparent that the authority to arrest for such violation without a warrant exists only when the offense is committed or attempted in the presence of the officer. The section we have quoted is an exact rescript of section 836 of the Penal Code of California, and was adopted from the laws of that state. It has been the uniform holding of the California appellate courts that this section authorizes a peace officer to

make an arrest for a misdemeanor only when he is armed with a warrant, or when the crime is committed or attempted in his presence. See *Ex parte Dillon,* 44 Cal. App. 239, 186 Pac. 170; *Dorris* v. *Mc-Kamy,* 40 Cal. App. 267, 180 Pac. 645; *Ferguson* v. *Superior Court,* 26 Cal. App. 554, 147 Pac. 603. The rule in the various states under the common law and the statutes thereof is in accord. See *Shanley* v. *Wells,* 71 Ill. 78; *Sanders* v. *Davis,* 153 Ala. 375, 44 South. 579; *Mitchell* v. *Gambill,* 140 Ala. 545, 37 South. 402; *Holliday* v. *Coleman,* 12 Ga. App. 779, 78 S. E. 482; *Markey* v. *Griffin,* 109 Ill. App. 212; *Gold* v. *Armer,* 140 App. Div. 73, 124 N. Y. Supp. 1069. And see cases cited in 5 C. J. 401, to the effect that it is the general rule that an officer has no authority whatever to arrest for a misdemeanor without a warrant unless the offense is committed in his presence.

The instructions were therefore erroneous in telling the jury that a police officer might justify an arrest upon his reasonable belief that the person arrested was at the time thereof violating an ordinance or upon probable cause to believe such fact, or upon it reasonably appearing to the officer that such an offense was being committed.

In the separate defense it is alleged that at the time of the arrest the plaintiffs were inmates of a house commonly known as a disorderly house, frequented by persons of ill repute for chastity, in violation of an ordinance of the city of Phoenix. Assuming that the offense so alleged may be committed in the presence of an officer who from actual knowledge of the elements thereof could testify to its commission in his presence (see *Crowley* v. *Rummel,* 22 Ariz. 179, 195 Pac. 986), these allegations of the plea, when taken in connection with the allegations of the complaint as to the manner in which the arrest was made,

present for decision the question whether a peace officer, acting upon his mere suspicion or belief that a misdemeanor is being committed in a house known to him to be disorderly, may, without warrant, enter such inclosure for the purpose of viewing the inmates thereof, and thereupon arrest them for a misdemeanor committed then and there in his presence. As already noted, the authority conferred by the provisions of the Penal Code goes no further than to justify an arrest by a peace officer for a public offense committed or attempted in the presence of such officer. No specific authority is given to enter a house or like inclosure in private ownership without invitation, except in cases where an arrest is to be made. In cases where an arrest is to be made, section 862 of the Penal Code provides that a private person if the offense be a felony, and in all cases a peace officer, may not only enter without invitation, but may also break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explaining the purpose for which admittance is desired. The provisions of our statutes on arrest are, for the most part, a codification of the common-law rules governing the subject, and we have found no authority which holds that the right claimed in this case may be exercised. In 5 C. J. 427, it is said that—

"A peace officer may, without a warrant, break into a dwelling or other house for the purpose of suppressing or preventing a disturbance or breach of the peace and of arresting the offenders."

This statement is supported by the cases cited, which establish also the proposition that a peace officer, without warrant and only upon his mere belief that a misdemeanor not amounting to a breach of the

peace is being committed therein, is without authority
to enter a private dwelling or inclosure for the pur-
pose of making an arrest for such an offense.   The
following cases illustrate the extent and scope of the
authority to make arrests in such cases and the con-
ditions of its exercise:

In *Ford* v. *Breen,* 173 Mass. 52, 53 N. E. 136, under
a statute providing that "whoever is found in a state
of intoxication in a public place, or is found in any
place in a state of intoxication committing a breach
of the peace or disturbing others by noise may be ar-
rested without a warrant by a . . . police officer,"
it was held that the terms of the statute were broad
enough to include a dwelling-house, and that the of-
ficers might enter such dwelling-house without express
or implied invitation to arrest one who was intox-
icated, committing a breach of the peace, or disturb-
ing others by noise.

In *Bailey* v. *Ragatz,* 50 Wis. 554, 36 Am. Rep. 862,
7 N. W. 564, it was held that a policeman had no right
to arouse a family after they had retired for the night,
and force an entry into the house, upon the mere
statement of some person to him that he had heard
that a woman of bad character was stopping there.

In *Commonwealth* v. *Krubeck,* 8 Pa. Dist. Rep. 521,
23 Pa. Co. Ct. R. 35, it was said:

"A careful consideration of the authorities and de-
cisions leads to the conclusion that the peace officer,
by virtue of his office and without a warrant, may
enter any house or inclosure, the entrance to which
is unfastened, and in which there is a noise amount-
ing to a breach of the peace, and may arrest therein
any person whom he finds engaged in an affray or in
committing an assault in his presence; and if there
be an affray in progress within the inclosure, he may
even break open the doors to keep the peace and pre-
vent the danger; but unless acts of violence are being
committed, or are threatened, or the conditions are

such as to indicate the commission of such acts, so that an affray is imminent, then an arrest will not be justified by the circumstances [citing cases].''

And in the case of *In the Matter of Sarah May*, 41 Mich. 299, 1 N. W. 1021, it was said:

''An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony and in breaches of the peace committed in presence of the officer.''

See, also, *Ferguson* v. *Superior Court, supra.*

As applied to the case here, the rule deducible from these authorities and from our own statutory provisions is that, though a peace officer is authorized to enter, without invitation, a house or like structure or inclosure in private ownership, where the circumstances are such as to give him knowledge through the report of his senses that a breach of the peace or other misdemeanor is being committed or attempted, and there to arrest the offenders for such crime, such officer is not justified either in making an entry into any such place for the mere purpose of placing himself in a position where he may observe the commission of a misdemeanor or in thereupon making an arrest therefor.

For these reasons the allegations of the plea just considered do not set forth facts sufficient to justify the arrest, and as the plea is also insufficient as a justification in alleging that the arrest was made merely upon reasonable or probable grounds for the officers' belief that a crime had been committed, and not their actual knowledge thereof, it must be held that the plea is wholly insufficient as one in justification of the false imprisonment charged.

It is urged by appellees, however, that exemplary damages having been prayed, the plea was sufficient and proper as setting forth matters in mitigation

thereof, such as the absence of malice and the existence of probable cause. It is unquestionably the general rule that in an action for false imprisonment evidence of reasonable and probable cause for defendant's belief in plaintiff's guilt, or that the defendant acted under an honest belief that he was within his legal rights, and with intent only to enforce the law, is admissible in mitigation of a claim for punitive or exemplary damages. But where plaintiff seeks only compensation for his actual injury the rule is different. In such an action evidence of reasonable and probable cause for defendant's belief in plaintiff's guilt, or other worthy motive, is not admissible in mitigation of the actual damage sustained. See the following authorities: *Comer* v. *Knowles,* 17 Kan. 436; *Garnier* v. *Squires,* 62 Kan. 321, 62 Pac. 1005; *Holmes* v. *Blyler,* 80 Iowa, 365, 45 N. W. 756; *Beckwith* v. *Bean,* 98 U. S. 266, 25 L. Ed. 124 (see, also, Rose's U. S. Notes); *Hostettler* v. *Carter* (Okl. Sup.), 175 Pac. 244; *Young* v. *Gormley,* 120 Iowa, 372, 94 N. W. 922; *Livingston* v. *Burroughs,* 33 Mich. 511; *Roth* v. *Smith,* 54 Ill. 431; and cases cited in notes to *Rogers* v. *Toliver,* Ann. Cas. 1914A, 1018, 45 L. R. A. (N. S.) 64; 11 R. C. L. (False Imprisonment), § 36, p. 821.

While the circumstances under which the arrest and imprisonment were made are admissible to show the quality and character of the act (*Stensrud* v. *Delamater,* 56 Mich. 144, 22 N. W. 272), actual malice or bad motives are not elements essential to constitute the trespass of false imprisonment. All that is necessary to make out such a charge is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard. See *Comer* v. *Knowles, supra*; 25 C. J. 448; *Southern Ry. Co.* v. *Shirley,* 121 Ky. 863, 12 Ann. Cas. 33, and note, 90 S. W. 597, 28 Ky. Law Rep. 860.

24 Ariz.—28

The rationale of these authorities is that the plaintiff being as much damnified by an act which is the outcome of a good motive as he would be were it to proceed from a bad one, the very preservation of the right of personal liberty against such violations requires that it be vindicated by an award of damages which will fully compensate for the wrong inflicted. In such cases, therefore, it is not competent for the defendant to introduce evidence to diminish the pecuniary satisfaction for the wrong committed nor to show that he had reasonable or probable grounds to do an act which the law forbids in any event. But where one is charged with falsely imprisoning another under circumstances which permit of an award of punitive or exemplary damages, he may show that his motives were good, and that, so far from having been actuated by malice, or fraudulent, malignant or oppressive purpose, he was governed by a belief, entertained in good faith and on reasonable or probable grounds, that he was performing his legal duty, or at least doing an act which the law would justify. So far as his act can be seen to have been prompted by such laudable motives, there is rebutted the imputation of wicked, malicious or corrupt design and evil purpose.

Applying these principles to the case here, we find that the complaint charges the arrest to have been made in the night-time, while the plaintiffs were sleeping in the bedroom of their home; that the defendants making the arrest were at the time intoxicated, and persisted in remaining in the bedroom, holding a flashlight on the woman plaintiff while she was dressing, and accusing her of acts of indecency and of frequenting places of ill repute; that they cursed and used vile and abusive language in the presence of the plaintiffs and certain friends; that Mrs. Adair was in a very delicate physical condition, having recently undergone

a serious surgical operation, and was under the treatment of a doctor, who had prescribed for her a certain diet, all of which she made known to such defendants; that she offered the defendants money, with the request that they secure for her, while in prison, the prescribed articles of diet, which said officers refused to do, and she was compelled to eat the coarse ordinary food provided for prisoners and criminals then imprisoned in the city jail.

In Sutherland on Damages (fourth edition), section 392, it is said that, in cases of this kind if an officer act recklessly, oppressively, insultingly or willfully and maliciously with a design to oppress and injure, the jury in fixing damages may go beyond the rule of compensation, and as a punishment of the defendant and as a protection to society against the violation of personal rights and social order award such additional damages as in their discretion they may deem proper. See same work, § 1258.

If these allegations of the complaint are sustained there can be therefore no question that the jury may award punitive or exemplary damages. The debatable question, upon which there is conflict of authority, is whether the defendant, under a general denial of the allegations of the complaint, without special plea, may make such proof in mitigation. We are convinced that the evidence should be allowed. While under a general denial of the allegations of the complaint an affirmative defense or proof of new matter is not admissible, the defendant may introduce any evidence which goes to controvert the facts which the plaintiff must establish in order to sustain the cause of action as pleaded in the complaint. The complaint in this case alleges and directly relies for the recovery of exemplary damages on the alleged oppressive and insulting conduct of the officers. The belief of the defendants that they were in the discharge of

their duties as officers, and the fact that they may not have been actuated by malice, but rather acted upon a belief in plaintiff's guilt, based upon reasonable and probable cause, does not constitute a justification of the trespass, and cannot be availed of under a plea as such, in bar of the action. But to show the improbability of the occurrence of the oppressive acts charged, and the nonexistence of an evil or malicious design, we think the defendants should be permitted, without special plea in mitigation, to introduce evidence to prove that they acted in good faith upon the belief that plaintiffs were violating the ordinances of the city of Phoenix, and were therefore liable to arrest. See *Hoxsie* v. *Empire Lumber Co.,* 41 Minn. 548, 43 N. W. 476; *Richardson* v. *Huston,* 10 S. D. 484, 74 N. W. 234; Sutherland on Damages, § 166. This conclusion is fortified by a consideration of the rules applicable to the evidence, which may be introduced by the defendant in an action for the cognate offense of malicious prosecution. In such cases plaintiff, to establish a cause of action, must allege and prove want of probable cause and malice. Under the general denial or general issue the defendant may prove facts showing the existence of probable cause, the nonexistence of malice, the guilt of plaintiff, and all circumstances of the transaction which tend to show his motive. 26 Cyc. 88 and authorities cited; 18 R. C. L. 31. By analogy, no reason is perceived why under the allegations of the complaint in the case at bar and proof adduced in its support the defendants should not be permitted, without special plea, to adduce all facts tending to disprove and controvert the case made by the plaintiffs, including the malicious intent and the acts charged, proceeding from evil purpose or motive, which constitute the basis for the claim of exemplary damages.

We conclude that, the special plea being insufficient as a justification and unnecessary as a defense, the demurrer thereto should have been sustained.

For the reasons given, the judgment will be reversed and the cause remanded for a new trial, with instructions to proceed in a manner not inconsistent with this opinion.

ROSS, C. J., and McALISTER, J., concur.