.Michael MOSS, Appellant,

v.

WABASH RAILROAD COMPANY,
a Corporation, Respondent.

No. 50445.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1964.

Sherman Landau, St. Louis, for appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, Alphonso H. Voorhees, St. Louis, for (defendant) respondent.

BARRETT, Commissioner.

By an amendment of the original petition this is now an action to recover $25,000 actual damages for an allegedly false arrest in 1951. A companion case, 1956, in which the plaintiff unsuccessfully sought both actual and punitive damages is Frank v. Wabash Railroad Company, Mo., 295 S. W.2d 16. The incident and arrest involved here was in the vicinity of the railroad's Delmar Street station, other false arrest cases involving other youngsters at nearby points on the railroad right-of-way are Manson v: Wabash Railroad Company, Mo., 338 S.W.2d 54 and Bond v. Wabash Railroad Company, Mo., 363 S.W.2d 1. On April 17, 1951, at 4:15 in the afternoon five children, ages 8, 9 and 11, after playing ball on a vacant lot nearby, were observed on the railroad right-of-way throwing rocks and sticks at a passing train. A railroad special agent detained the children, took them to a room in the railroad station and called the police. A policeman, followed by another special agent, took the children to the Twelfth District Station and ninety minutes later delivered them to their homes with directions to report to the police station next day. The following morning the children and their parents appeared at the station and a policeman and a special agent lectured them on the dangers of being on the railroad tracks and particularly of the dangers involved in throwing rocks and other missiles at passing trains. The plaintiff Michael Moss, then aged nine years was one of those five children. Upon the trial of his action for damages for false arrest, twelve years after the event and when he was 23 years of age, a jury returned a verdict in favor of the defendant railroad. Upon his appeal Michael has briefed and argued four assignments of error, three of them relating to the admission and exclusion of evidence and one concerning an instruction.

■ As to the exclusion of evidence it is urged that the court erred in denying to the plaintiff the right "to show that he had been subjected to humiliation and embarrassment on several occasions by being required to account for his arrest by defendant on the occasion in issue in this case."

It is said that the prejudicial effect of the court's ruling in this respect was "augmented" by instruction 3 requiring the jury to return a verdict for defendant if the plaintiff "had not proved by the greater weight of the evidence 'that he was damaged.' " Of course as to compensatory damages the general rules in all personal tort actions are applicable and "plaintiff is entitled to recover such a sum as will be a fair and just compensation for the injuries sustained," but "the recoverable damages are limited to such compensation." 22 Am.Jur. (False Imprisonment) § 129, p. 436. The point is not urged by the respondent and so is not a determinative factor here but from the jury's verdict and this record it is indeed arguable that there was a supported finding that plaintiff was not in fact actually damaged, in a compensatory sense, by the incident involved here. Another point of view, although not urged by the respondent, is that the verdict in favor of the defendant was a finding on the merits of no liability on the part of the Wabash, therefore this particular argument relates to the issue of damages only, a problem the jury did not reach or consider.

In any event insofar as testimony of witnesses is concerned or offers of proof (not what plaintiff's counsel may have said in an opening statement or colloquy with court and counsel) there appear to be but two pertinent incidents, both in the direct testimony of Michael. It was developed that he had never been arrested either before or since the incident of April 17, 1951, and that he was not required to appear in juvenile court on that occasion. It was then established that Michael had served four years and seven months in the Marine Corps. Whereupon his counsel inquired, "And did you fill out an application before you were accepted in the Marines?" Defense counsel, anticipating that counsel would next inquire whether he had been required to explain his 1951 "arrest," objected on two of several grounds that the application would be the best evidence and that any "juvenile record" could not be used

against the juvenile, Section 211.271 RSMo 1959, V.A.M.S. Plaintiff's counsel interjected with the response, "We don't purport to use it against him; we want to use it in his favor." The court sustained defendant's objection. Plaintiff's counsel then went on to other matters, there was no offer of proof and with the record in this posture the plaintiff is in no position to complain. This is wholly aside from the fact that if Michael was required to explain this "record" to the Marine Corps it must not have been too humiliating or damaging as he successfuly served four years and seven months and was honorably discharged.

The other point in this connection arose when counsel inquired, "Michael, do you at this present time have an application for enlistment in the Military Service?" Michael answered, "Yes sir," and again the court sustained defense counsel's objection. Plaintiff's counsel then made an offer of proof that he had filed an application for enlistment with the Air National Guard and was "required to complete a questionnaire which inquired of him as to whether he had ever been arrested, and, further, that he was required to answer the question that he had been because of this arrest on April 17, 1951." Again there was no further offer of proof or suggestion and it is not immediately apparent that his having to so answer or explain was very embarrassing to an ex-marine or particularly injurious in the absence of a claim that this particular incident caused him to be rejected. These are the only two pieces of evidence relied on apparently and aside from the fact as instruction 3 required "that he was damaged," it may be that the jury never reached that issue

The two briefed objections to the admission of evidence are couched in these terms; that the court erred "in its multiple rulings * * * authorizing defendant to introduce evidence of alleged misconduct of children, other than this plaintiff, on unspecified occasions other than the occasion in issue in this case." Or, second, that the

court erred in admitting "the hearsay content of the alleged police report, purporting to record the arrest of this plaintiff," that it was not an entry made in the regular course of business and "erroneously incorporated references to supposed conduct on other occasions (unspecified) of other children (unknown)." The foundation of both these objections, and to distinguish this case from all other false arrest cases, including the companion case of Frank v. Wabash Railroad Company, supra, is that here "where the plaintiff seeks only compensation for his actual injury, the rule is different. In such an action (where compensatory damages only are sought and there is no claim for punitive damages) evidence of reasonable and probable cause for defendant's belief in plaintiff's guilt, or other worthy motive, is not admissible in mitigation of the actual damage sustained." It is stated that the petition in this case was amended to eliminate punitive damages and ask for compensatory damages only "(f)or the express purpose of eliminating from the trial of this case any extraneous issue of claimed misconduct of other children on other occasions." It is not necessary, however, to go into the rationale of this doctrine and consider whether in any and all events it is applicable, for the purposes of this opinion it is assumed that there is such a general rule. Adair v. Williams, 24 Ariz. 422, 210 P. 853, 26 A.L.R. 278. It should be pointed out, nevertheless, that Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S.W.2d 687, does not support the plaintiff's claim of such a doctrine. The argument may have been made in that case but the court very carefully pointed out that as to one piece of evidence "counsel voluntarily withdrew (the) offer," that for three objected reasons, one being the failure to introduce the best evidence, the court sustained objections and "therefore that appellants are in no position to complain." 344 Mo. 1, c. 652, 127 S.W.2d 1. c. 689.

The quotation from the Newport case inferentially answers at least in part some of the objections made here. One of the special agents, the one who observed Mike and his companions throwing rocks and sticks and who in the first instance detained the boys, said that he had received a special order to patrol the area of the Delmar station "Due to the difficulties of boys throwing rocks on the trains in that area." Plaintiff's counsel made no objection when that testimony was given. From the plaintiff's witness Frank, the father of Richard in the companion case (295 S.W. 2d 16), it was brought out that special agent Murphy (now deceased) in his lecture to the children and parents painted a graphic picture of a Mexican national, in the custody of an immigration officer, injured near the Delmar station when "someone threw some type of an object that hit a window * * * and fragmentation from the glass completely put out one eye, and the other was in such shape that it was practically useless." Furthermore the witness said that Murphy told them that as a result of this episode a $50,000 damage suit was pending against the railroad and finally even "that the incident had caused some strained diplomatic relations between our Government and the Government of Mexico." In connection with the testimony of this witness and, to quote plaintiff's counsel, "on the question of veracity" (Murphy's) plaintiff offered in evidence the hospital record of Salvador Zepeda Arceo of March 28, 1951 (just a few days before the incident involved here) showing "Admission diagnosis: Foreign bodies, glass fragments, right eye; *No injury.*" Then plaintiff's counsel read from Murphy's testimony in the Frank trial in which he was examined at length as to his "lecture" and whether he had told the parents and children that the Mexican national had been seriously injured and had sued the railroad for $50,000 damages.

In response to this evidence by plaintiff the defendant offered the deposition of Salvador Zepeda Arceo, the Mexican citizen who said that while a passenger on the Wabash train on March 28, 1951, about 5

o'clock and just before getting into St. Louis, "I was hurt during the trip by a rock that was thrown through the window." There was the deposition of Eduardo Velez Aleman, a fellow passenger of Arceo on the train when the window broke. In describing the incident he said, "It was kind of a cliff near the track of the train and I saw two boys on the cliff throwing rocks at the train. * * * There were two boys. One was about eight years old and one was about six years old. * * * Both boys were throwing rocks. * * * The rocks went through the window in front of me." Aside from the fact that plaintiff injected this particular episode into the case, there was no objection by plaintiff to any of the quoted testimony.

And briefly as to the police report; the plaintiff's first witness was the clerk of the records section of the Metropolitan Police Department. Plaintiff had this witness explain certain records, particularly "a salmon-colored card" (the witness called it "an incident card") bearing the name of plaintiff Michael Moss. This card showed the date of the occurrence involved here, Michael's age and the fact that "he was taken into custody." In cross-examination defense counsel had this witness identify as a record of the department the "police report." Near the close of the case when the report was finally offered in evidence plaintiff's objections were not the ones he now makes upon this appeal. Then he objected "to this allegation in the police report that juveniles were turned over to them by the above special agent for trespassing on the Wabash right-of-way and throwing sticks and stones at the Wabash train, *in the plural.* There is nothing to connect up these children to any other train." That part of the report stating that "the youths and parents were interviewed in the presence of John Murphy * * * who stated they were having particular trouble in that vicinity" was objected to on the grounds that "it is hearsay; and second, there is nothing in this case which in any

manner connects up these children with any prior event."

It is not necessary to say whether this record is hearsay or to go into detail as to its status as a business record. The whole record in this case could be further examined but the quotations are sufficient to put the matter complained of in the context of the trial. It is not necessary to point out that much of the matter complained of was "merely cumulative of similar evidence which had previously come in without objection." Evinger v. Thompson, 364 Mo. 658, 673, 265 S.W.2d 726, 734; Bond v. Wabash Railroad Company, Mo., 363 S.W.2d 1, 5. In summary as to all the complaints reasonably within the purview of the plaintiff's objections to the trial court and assuming for the purposes of argument that in part the police report was "hearsay," there is in final analysis the fundamentally essential "problem of 'whether it is prejudicial to the other (appellant), so as to warrant or require the granting of a new trial or the reversal of a judgment,'" and it might be added at the hands of this court on appeal. Annotation 59 A.L.R.2d 371, 373; Smith v. Wabash Railroad Company, Mo., 338 S.W.2d 16. In conclusion as to these three assignments of error made upon this appeal, considering the objections in the proper context of the trial, including the origin of the evidence in the case, and the nature of the specific objections, it may not be said that the evidence was manifestly prejudicial to the plaintiff's right to a fair trial so as to demand the granting of a new trial upon this appeal. V.A.M.S. § 512.160; Cammarata v. Payton, Mo., 316 S.W.2d 474, 478; Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239; Mash v. Missouri Pacific Railroad Co., Mo., 341 S.W.2d 822, 828.

■ Instruction 6 consists of this single sentence: "You are instructed that under the law of Missouri, the records of any proceedings of the Juvenile Court, as well as any police officer's records for any person below the age of seventeen years, are confidential and are open to inspection only

upon order of Court." This ill-conceived instruction paraphrases and purportedly is authorized by one or more sections of the juvenile code, V.A.M.S. §§ 211.271, 211.321. The objection to it is that it is a "bare abstract statement of purported law with no effort made to apply the alleged principle of law to the facts of this case." It is urged that the instruction was misleading "under the evidence in this case in that it had the effect of wrongfully implying to the jury that plaintiff would not be required to reveal the fact of his arrest to a prospective employer or to his military superiors." What has been said in connection with the admission and exclusion of evidence in these respects may be sufficient to inferentially dispose of this assignment of error. The records, such as they were (there were in point of fact no "juvenile court" records), were introduced in evidence by the plaintiff, there was no proof or offer of proof that Michael had or would be required to reveal his arrest to "a prospective employer" and, as indicated, the plaintiff's proof on this score had to do with the measure of damages not the merits of the cause. As far as the merits of the case and of this appeal are concerned the subject of this instruction was an entirely collateral matter. It is very difficult to conceive of a good and sufficient reason for the railroad's offering the instruction—it is only fair to say that it had no place in the case and should not have been given. Fortunately for the respondent, it relates to an entirely collateral matter and as the appellant says it is "a bare abstract statement of purported law." In the appellant's argument it is said that the instruction was "deliberately designed and phrased by defendant to confuse and mislead the jury as to *an important element of plaintiff's actual damages.*" As indicated in another connection, the jury may not have reached the question of "actual damages." But even if they did it is not believed that this instruction, as with the admission of evidence, in the context of this trial and in the particular circumstances of this case was manifestly preju-

dicial and compels the granting of a new trial. V.A.M.S. § 512.160; Cammarata v. Payton, 316 S.W.2d 1. c. 481; Mash v. Missouri Pacific Railroad Co., supra.

For the reasons indicated the trial court did not prejudicially err in denying plaintiff a new trial and accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.