IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| AURELIO TORREZ, a single man, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | 2 CA-CV 2002-0087 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| Deputy J. KNOWLTON, a single man, and | ) | |
| CLARENCE DUPNIK, Sheriff of Pima | ) | |
| County, Arizona, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C 20005854

Honorable Christopher C. Browning, Judge

AFFIRMED

Monroe & Associates, P.C.
  By Karl MacOmber                                                                    Tucson
                                                        Attorneys for Plaintiff/Appellant

Barbara LaWall, Pima County Attorney
  By David L. Berkman                                                                 Tucson
                                                      Attorneys for Defendants/Appellees

D R U K E, Judge (Retired).

¶1	A Pima County deputy sheriff arrested Aurelio Torrez on a warrant that the issuing court had quashed some seven months before the arrest. Torrez sued the sheriff and the deputy, claiming false arrest and a civil rights violation under 42 U.S.C. § 1983. After the parties filed cross-motions for summary judgment, the trial court granted summary judgment in favor of the sheriff and the deputy on both claims, ruling that "legal justification existed, as a matter of law," to arrest Torrez and that his federal civil rights had not been violated. We affirm.

## Standard of Review

¶2	We review de novo a trial court's granting of summary judgment. Pleak v. Entrada Prop. Owners' Ass'n, No. 2 CA-CV 2001-0100, 2003 WL 21731293 (Ariz. Ct. App. July 25, 2003). Under our rules of civil procedure, a trial court properly grants summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1), 16 A.R.S., Pt. 2. Accordingly, a trial court may grant summary judgment if, based on the undisputed, material facts, reasonable people could not agree with a party's claim or defense. Orme Sch. v. Reeves, 166 Ariz. 301, 802 P.2d 1000 (1990). Because the parties in this case do not dispute the following material facts, we limit our review to the trial court's application of the law to these facts in deciding whether the court properly granted summary judgment. See Pleak.

## Facts

¶3	In October 1999, the superior court issued an arrest warrant for Torrez after, through no fault of his own, he failed to appear for a hearing in a paternity case. Consistent with standard procedure, the clerk of the court sent a duplicate copy of the warrant to the sheriff's office. The following month, the court quashed the warrant, based on the parties' stipulation, but

the clerk neglected to follow standard procedure and notify the sheriff's office that the warrant had been quashed. Had the clerk done so, a sheriff's office employee would have stamped the word "quashed" on the duplicate copy and sent it back to the court. But, because the clerk failed to follow standard procedure, the duplicate remained in the sheriff's file, and the warrant stayed active in the computer database, until the deputy stopped Torrez for a traffic violation in June 2000. During the stop, the deputy called the sheriff's office; when the computer database showed an active warrant for Torrez, the duplicate was manually located to confirm the warrant. The deputy then arrested Torrez on the warrant and took him to jail. Torrez later filed claims of false arrest and a civil rights violation against the sheriff and the deputy. He appeals from the trial court's granting of summary judgment in their favor on the false arrest claim.[1]

### Discussion

¶4        As he did below in opposing summary judgment, Torrez correctly asserts that the tort of false arrest occurs when a person is unlawfully detained without consent. See Slade v. City of Phoenix, 112 Ariz. 298, 541 P.2d 550 (1975) (unlawful detention essential element of false arrest and false imprisonment); see also Cullison v. City of Peoria, 120 Ariz. 165, 584 P.2d 1156 (1978) (false imprisonment defined as detention of person without consent and without lawful authority); Reams v. City of Tucson, 145 Ariz. 340, 701 P.2d 598 (App. 1985) (person falsely arrested when detained without consent and without lawful authority); 1 Dan B. Dobbs, The Law of Torts § 36, at 67 (2001) (officer commits false arrest by intentionally detaining person against

---

[1]Because Torrez does not argue on appeal that the trial court improperly granted summary judgment on the civil rights claim, we consider the issue abandoned. See Ariz. R. Civ. App. P. 13(a)(6), 17B A.R.S.; see also DeElena v. S. Pac. Co., 121 Ariz. 563, 592 P.2d 759 (1979) (issues not argued on appeal deemed abandoned).

3

person's will); W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 11, at 50 (5th ed. 1984) (person's submission to arrest effected without legal authority constitutes false arrest). Torrez thus argues that the tort of false arrest occurred here because his arrest was based on a quashed warrant and, therefore, was illegal. In support of his position, Torrez relies primarily on a criminal case decided by our supreme court, State v. Evans, 177 Ariz. 201, 866 P.2d 869 (1994).

¶5        Evans, like Torrez, was stopped for a traffic violation and arrested based on a computerized records check that showed he had an outstanding warrant. A police officer found a bag of marijuana in Evans's car after the arrest, and he was charged with unlawful possession of marijuana. Evans moved to suppress the evidence, arguing that his arrest was illegal because the justice of the peace who had issued the warrant had quashed it several weeks before the arrest. Although the trial court could not determine whether justice court staff or law enforcement employees had failed to remove the warrant from the computer database, the court apparently concluded it did not matter, applied the exclusionary rule, and granted the motion.

¶6        A divided court of appeals reversed the ruling in State v. Evans (Evans I), 172 Ariz. 314, 836 P.2d 1024 (App. 1992). The court found that, because the evidence indicated court staff had failed to inform law enforcement personnel that the warrant had been quashed, the trial court had misapplied the exclusionary rule. That rule, said the court, "is intended to deter police misconduct and not to punish errors of judges and magistrates." Id. at 317, 836 P.2d at 1027.

¶7        On review, our supreme court affirmed the trial court's application of the exclusionary rule. The supreme court determined that "no warrant" existed at the time Evans was

4

arrested and, thus, his "warrantless arrest" was "plainly illegal" because it had been "based entirely . . . on an erroneous computer entry." Evans (Evans II), 177 Ariz. at 203, 866 P.2d at 871. The court also declined to apply the good-faith exception to the exclusionary rule enunciated in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3430, 82 L. Ed. 2d 677 (1984). The court stated that, "even assuming . . . that responsibility for the error rested with the justice court," Evans II, 177 Ariz. at 203, 866 P.2d at 871, application of the exclusionary rule would "serve to improve the efficiency of those who keep records in our criminal justice system." Id. at 204, 866 P.2d at 872.

¶8        Despite the factual similarities of Evans II and this case, we find Torrez's reliance on Evans II misplaced. First, as already noted, Evans II is a criminal case and dealt only with the application of the exclusionary rule. More importantly, the United States Supreme Court disagreed with our supreme court's application of the exclusionary rule in Evans II and reversed its decision in Arizona v. Evans, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995). The Supreme Court observed that, although the exclusionary rule generally deters future Fourth Amendment violations, the Court's prior decisions in Illinois v. Krull, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); Massachusetts v. Sheppard, 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984); and Leon established a good-faith exception to the rule and limited its application "to those instances where its remedial objectives are thought most efficaciously served." Arizona v. Evans, 514 U.S. at 11, 115 S. Ct. at 1191, 131 L. Ed. 2d at 44. Those instances, said the Court, do not include warrants issued as a result of judicial errors or mistakes because the rule's application under those circumstances would not have "a significant deterrent effect on the issuing judge or magistrate." Id. The Court thus held that, "[i]f court employees

5

were responsible for the erroneous computer record," as our supreme court had assumed, "the exclusion of evidence at trial would not sufficiently deter future errors [by court employees] so as to warrant such a severe sanction." Id. at 14, 115 S. Ct. at 1193, 131 L. Ed. 2d at 46. The Court concluded that Leon and its progeny established a categorical, good-faith exception to the exclusionary rule "for clerical errors of court employees." Id. at 16, 115 S. Ct. at 1194, 131 L. Ed. 2d at 47.

¶9 Torrez nonetheless argues that an officer's good-faith belief in the propriety of an arrest is no defense to the tort of false arrest or false imprisonment, citing our supreme court's early decision of Adair v. Williams, 24 Ariz. 422, 210 P. 853 (1922). There, police officers had entered the Adairs' home without a warrant and then arrested them for allegedly committing the misdemeanor offense of unlawful cohabitation in the officers' presence. The Adairs filed a claim for false imprisonment and, following a trial, appealed from an adverse jury verdict. The supreme court reversed, based on an erroneous jury instruction.

¶10 The court determined that the officers' warrantless entry into the home was unlawful and, therefore, that their subsequent warrantless arrest of the Adairs was likewise unlawful. "[An] officer is not justified either in making [a warrantless] entry into [a house] for the mere purpose of placing himself in a position where he may observe the commission of a misdemeanor or in thereupon making an arrest therefor." Id. at 432, 210 P. at 856. The court thus held that the officers could not defend against the false imprisonment claim, as the trial court had instructed the jury, on the ground that the officers had arrested the Adairs without a warrant "upon a [good-faith] belief in [their] guilt." Id. at 436, 210 P. at 857.

6

¶11 The supreme court's holding follows the general rule that, if a person commits an intentional tort, "such as trespass to land, battery, or false imprisonment, it will be no excuse . . . that [the person] was mistaken as to something justifying his conduct." Keeton, supra, § 17, at 111; see also 1 Dobbs, supra, § 69, at 158 (mistake, as such, "is not a recognized defense"). This general rule does not apply, however, when the person "is regarded as having a justifiable reason for the exercise of a privilege." Keeton, supra, § 17, at 111. "Courts recognize many privileges or justifications that can be invoked by a defendant to defeat a claim that would otherwise be actionable." 1 Dobbs, supra, § 68, at 155. Two Arizona cases have, for example, recognized a law enforcement officer's privilege to arrest a person on a valid warrant.

¶12 In the first case, Slade, a justice of the peace had issued a warrant for Slade's arrest based on a criminal complaint filed by the county attorney. After a city police officer arrested Slade on the warrant, the complaint was dismissed for lack of evidence. Slade then sued for false arrest, false imprisonment, and malicious prosecution. The trial court directed a verdict against Slade on all claims, and the supreme court affirmed the ruling on appeal. In affirming the directed verdict on the false arrest and false imprisonment claims, the court held that Slade had not presented any evidence of unlawful detention to support the claims because he had conceded the arrest had been based on "a duly issued warrant of arrest from a lawful magistrate." Slade, 112 Ariz. at 300, 541 P.2d at 552; see also Cullison (detention on valid warrant not unlawful detention).

¶13 In the second case, Brendel v. County of Pima, 121 Ariz. 451, 591 P.2d 77 (App. 1979), a police officer had issued a repair order to Brendel, who was told he need not appear in court if he corrected the problem and notified the court. Brendel did so, but his notification was

not reflected in the court records. After he failed to appear in court, a warrant was issued for his arrest. Three years later, a deputy sheriff stopped Brendel for a traffic violation and then arrested him on the warrant.

¶14 Brendel later filed a claim for false arrest. The trial court granted summary judgment against him, and this court affirmed the judgment on appeal. We observed that, after the deputy confirmed the warrant had not been "satisfied, cancelled or voided," he had been "oblig[at]ed to take [Brendel] into custody." Id. at 453, 591 P.2d at 79. In support, we relied on comment a to § 123 of the Restatement (Second) of Torts (1965). Section 123 sets forth the requirements for a valid warrant, and comment a states in relevant part:

> A warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged. The guilt or innocence of the accused is not a matter which concerns the officer. It is his duty to serve the warrant and he is privileged to do so, even though he has reason to believe or even knows that the person for whose arrest the warrant is issued is in fact innocent of the offense with which he is charged.

We thus affirmed summary judgment on Brendel's false arrest claim, concluding that the deputy had "acted properly under authority of a valid warrant." Brendel, 121 Ariz. at 453, 591 P.2d at 79; see also 1 Dobbs, supra, § 82, at 190 (peace officers not liable for properly executing valid warrant); Keeton, supra, § 25, at 149 (officer who arrests under warrant not liable if acted duly and properly); 1 Fowler V. Harper et al., The Law of Torts § 3.17, at 3:99 (3d ed. 1996) (valid arrest warrant affords privilege when properly served).

¶15 But Slade and Brendel did not involve, nor have any Arizona cases addressed, whether a privilege applies when, as here, a false-arrest claim arises from an arrest on an invalid

8

warrant. Accordingly, on this issue of first impression, "we look to the Restatement for guidance." Burns v. Davis, 196 Ariz. 155, ¶5, 993 P.2d 1119, ¶5 (App. 1999); see also Bruce v. Chas Roberts Air Conditioning, Inc., 166 Ariz. 221, 801 P.2d 456 (App. 1990) (Arizona appellate courts follow Restatement absent case law to the contrary).

¶16        Restatement (Second) of Torts § 124 addresses invalid warrants and distinguishes between two types. The first type is an invalid warrant "fair on its face." Id. at 213. This type of warrant appears "regular in form" but "differs from a valid warrant in one or more . . . particulars," such as lack of jurisdiction over the person. Id. cmt. a, at 213.[2] A warrant fair on its face "is not valid, . . . but it creates the same privilege to arrest under it as a valid warrant would create." Id. Comment b to § 124 adds:

> If a warrant, although in fact invalid for any reason, is in regular form and contains every required recital of fact, and if the facts stated, if true, would authorize the court to issue it, and if there is nothing stated or omitted to indicate that the proceedings necessary to its proper issuance have not been duly taken, the person designated to serve it is privileged to arrest under it even though, because of facts not stated in it, the warrant is invalid.

Id. at 214; see also Nelson v. City of Las Vegas, 665 P.2d 1141 (Nev. 1983) (although void for lack of personal jurisdiction, facially valid warrant provides legal justification for arrest); 1 Dobbs, supra, § 82, at 191 (officer executing facially valid warrant protected from liability even if warrant improperly issued); 1 Harper, supra, § 3.17, at 3:99 (apparently valid warrant affords arresting officer privilege when warrant properly served); Keeton, supra, § 17, at 111 (officer

---

[2]Also, as the sheriff and the deputy point out, A.R.S. § 11-447 provides that a sheriff "shall execute all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued."

9

privileged to arrest on warrant valid on its face, although warrant invalid because improperly issued).

¶17            Conversely, the law provides no privilege to an officer who arrests a person on an invalid warrant that is not fair on its face. An invalid warrant is not fair on its face

> if the kind of examination which the reasonable officer can fairly be expected to make would show that it is not valid. The officer is required to know at least the superficial characteristics of a valid warrant; and he will be liable if it is too general in its terms, fails properly to name the party wanted, or is returnable at the wrong time, or does not charge a crime.

Id. § 25, at 149-50 (footnotes omitted); see also 1 Harper, supra, § 3.17, at 3:100 (officer not protected when officer can, by examination of warrant, determine its invalidity).

¶18            Based on the above criteria and the record before us, we conclude that the warrant on which the deputy arrested Torrez was an invalid warrant fair on its face. Nothing in the record suggests that the duplicate copy of the warrant in the sheriff's file did not appear to be regular in form when Torrez was arrested or that a reasonable examination of the duplicate at that time would have disclosed its invalidity. Not only had the sheriff's computer database shown that the warrant remained active, but a sheriff's employee had also found the duplicate in the sheriff's file. This suggested that the warrant was still valid because, as noted above, the duplicate would have been returned to the court had the clerk properly notified the sheriff that the warrant had been quashed.

¶19            Under the circumstances, the deputy was privileged to arrest Torrez on the facially valid warrant, and that privilege now protects the sheriff and the deputy from liability on Torrez's

false arrest claim. See Nelson; Restatement § 124; Keeton, supra, § 17; 1 Dobbs, supra, § 82; 1 Harper, supra, § 3.17. As one court observed almost a century ago:

> [F]or reasons founded on public policy, and in order to secure a prompt and effective service of legal process, the law protects its officers in the performance of their duties, if there is no defect or want of jurisdiction apparent on the face of the writ or warrant under which they act.

Rush v. Buckley, 61 A. 774, 776 (Me. 1905); see also Keeton, supra, § 17, at 111 (burden of mistake placed on person arrested on facially valid warrant because socially necessary that officers have leeway to make arrests). And, as we noted in Brendel, "[t]he fact that the [deputy] did not have the actual warrant in his possession, enabling him to inspect it, is of no consequence. Confirmation that the warrant was outstanding is a procedure commonly used and is necessary to effective law enforcement." 121 Ariz. at 453, 591 P.2d at 79; see also Scott v. District of Columbia, 493 A.2d 319 (D.C. 1985) (officer not liable for false arrest or false imprisonment after making arrest based on law enforcement computer printout that, on its face, reflected valid warrant, although invalid because warrant had been issued for wrong person).

¶20        Torrez nonetheless asserts that the sheriff cannot "escape liability by pointing the finger" at the clerk of the court.[3] Torrez argues that the "Sheriff ha[d] delegated a part of his duty in determining the validity of warrants to the Clerk of the Superior Court and its employees" and that "[t]his duty is legally non-delegable, meaning that the Sheriff remains liable for the negligence of his agents." We need not address this issue, however, because Torrez did not include a

---

[3]Torrez did not name the clerk of the court as a defendant in this case.

11

negligence claim in his complaint. Indeed, Torrez has consistently maintained both in the trial court and on appeal that this case "does not sound in negligence."

¶21    Accordingly, because we conclude the deputy was privileged to arrest Torrez on an invalid warrant that was fair on its face, we affirm the trial court's granting of summary judgment in favor of the sheriff and the deputy on the false arrest claim. And, because Torrez is not the prevailing party, we deny his request for attorney's fees on appeal.


_____
WILLIAM E. DRUKE, Judge (Retired)

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge


_____
JOHN PELANDER, Presiding Judge

12